### SOLOMON GRAVES *vs.* CLARINDA H. SPIER.

The prayer for relief, in a complaint, is no part of the cause of action, and does not determine the character of the action.

The nature of the action, and the cause of action, are shown by the facts stated in the complaint.

Where the facts stated in a complaint constitute a cause of action for the recovery of damages for false and fraudulent representations made by the defendant in negotiating the sale and transfer of a bond and mortgage in payment for land purchased, and the prayer for relief is a demand of judgment for damages in a specified amount, the action must be held to be, and treated as, an action at law to recover the damages sustained by reason of the fraud.

And this, notwithstanding there is also a prayer for relief in the alternative— " or that the defendant be adjudged to reconvey the premises," to account for the use, income and profits thereof, or for other relief; where no cause of action which could entitle the plaintiff to the alternative relief is stated in the complaint.

A cause of action for fraud in the purchase and sale of real estate survives, to and against the personal representatives of a deceased party to the transaction, and is therefore assignable, so that the assignee may maintain an action upon it.

A married woman is liable for the fraud of her husband acting for her, as her agent, in the purchase of real estate, although she was wholly ignorant of the fraud practised, and did not authorize it; where she had the fruits of the bargain, kept the property bargained for, and sold it, and retains the proceeds.

She will be held, under such circumstances, to have made the instrumentalities, by which the property was procured, her own. And the law will impute the wrong to her, as it was done for her benefit and she retains the advantage.

Where, upon the purchase of land by a married woman, through her husband acting as her agent, the husband makes false and fraudulent representations respecting a bond and mortgage given in payment of the purchase money, knowing them to be false; and such representations are material, and the vendor relies upon them, and sustains damages in consequence, an action can be maintained by him, or his assignee, against the wife, for the fraud.

In such an action the measure of damages is, the difference between the value of the mortgage debt as it would have been had the mortgaged premises been free from all prior incumbrances, as represented, and its value as it turned out to be, with the mortgaged premises incumbered by prior mortgages and judgments.

Where, in such a case, two prior mortgages were foreclosed by action, and the premises sold, in satisfaction thereof, and the same were struck off to the plaintiff's assignor, and an execution issued in an action brought by him

Graves *v.* Spier.

upon the bond was returned unsatisfied; *Held* that the plaintiff was entitled
to recover of the defendant the whole amount of the mortgage debt, over
and above the surplus arising from the sale under the prior mortgages, with
interest on that balance, by way of damages.

Assignments introduced in evidence are not void because the stamps thereon
are not canceled; where there is no evidence, or room for pretense, that
they were left uncanceled for the purpose of defrauding the government.

Where a reference is by consent, and the action is tried without objection that
it is not a referable action, no question can be raised, on appeal, in regard to
the mode in which it was tried.

APPEAL from a judgment entered upon the report of
a referee.

In the year 1861, Margaret S. Graves was the owner of
a separate estate, consisting of valuable premises situate
in the village of Geneva, N. Y., upon which she then re-
sided with her husband, the planitiff in this action. At
the same time, the defendant, Clarinda H. Spier, was also
a married woman, the wife of David S. Spier, and resided
with her husband at Albany, N. Y. She was possessed
of a large separate estate, and, among other things, was
the owner of a bond and mortgage executed by William
H. Walker and wife, upon certain premises in Schodac,
Rensselaer county, N. Y., conditioned for the payment of
$8500 and interest, and known in this case as the "Walker"
bond and mortgage. The defendant and her husband
had previously resided in Geneva, and wished to return
and purchase a residence there, and with that view opened
negotiations with Mrs. Graves, in the latter part of the
summer of 1861, for the purchase of her premises in Ge-
neva, which negotiations resulted, on the 8th day of Oc-
tober following, in the exchange and transfer of said
Geneva property for the Walker bond and mortgage. The
sole consideration received by Mrs. Graves for the trans-
fer of the Geneva property, was an assignment of said
Walker bond and mortgage. The negotiations, through-
out, were conducted by the plaintiff, her husband, in be-
half of Margaret S. Graves, and by David S. Spier, her

husband, and Levi Safford, a real estate broker residing in Albany, in behalf of the defendant. It was admitted that Solomon Graves and David S. Spier were each the general agents in managing the estates of their respective wives, and also, that each acted as the agent of his wife in conducting the negotiations which resulted in effecting said exchange. During the negotiations, the said David S. Spier and Levi Safford, as agents in behalf of the defendant, represented said Walker mortgage to be the first and only lien and incumbrance of any kind upon the premises in it described, and that said premises were of much greater value in the market than the face of the mortgage, claiming and representing that they knew all about the premises, the incumbrances and title thereto, affirming that the farm had repeatedly passed through their hands, and that they had personal knowledge and information of the title and incumbrances. On one occasion they also produced what purported to be a search of the premises described in said mortgage, and exhibited it to said Graves, from which it appeared there were no other incumbrances upon said premises, which they represented to be a true search; and assigning some reason for temporarily retaining the same in their possession, took it away, promising but in fact evading a return thereof to Graves for further inspection, and though efforts have been made, the plaintiff has been unable to find the same. Said representations were false in fact, and confiding in them, Margaret S. Graves was induced to convey the premises to the defendant. At the time of said negotiations and transfer, there were two prior mortgages upon the premises described in the Walker mortgage, and one judgment; upon which mortgages and judgment there remained due and unpaid, in the aggregate, the sum of about $5000, which were valid and prior liens. The oldest of said prior mortgages was foreclosed

in 1863, and the premises sold upon foreclosure sale. Mrs. Graves realized about $1100 out of the surplus moneys arising therefrom. The bond accompanying said mortgage was worthless, and said Walker was insolvent. This action was brought to recover damages for the injury and loss sustained by Mrs. Graves and her assignee, resulting from the fraudulent representations made.

Before the commencement of this action, Mrs. Graves assigned her claims against the defendant for the injury sustained by her to William F. Eddington, who transferred the same to this plaintiff. And before the commencement of this action, the defendant was fully apprised of the fraud, principally perpetrated by her agents, and was tendered a reassignment of said Walker bond and mortgage, and a judgment subsequently obtained against him on said bond, and she was requested to reconvey or return the avails of said Graves' property, but she refused to do anything in the matter, and persisted in retaining the fruits of the transaction.

The complaint set forth the above facts, substantially, and demanded a reconveyance, or judgment for the full value of the premises.

The answer admitted the existence of prior mortgages, denied any false statements, and set out as a separate defense that the plaintiff had not offered to reconvey within proper time, and had affirmed the exchange after full knowledge of all the facts, including those constituting the alleged fraud.

The cause was, by consent of counsel, referred to Hon. W. H. Smith, to hear and decide. Several questions were raised upon the trial, which appear in the points of counsel. The referee reported in favor of the plaintiff, and assessed the damages at $7652.22.

Judgment was entered for $8218.40, from which judgment the defendant appealed to this court.

*McDonald & Rose,* for the appellant.

I. This action is an action in equity for the rescission of the contract and return of the property, or the repayment of the value paid, because the defendant had disposed of the property, and hence an actual return could not be made. The plaintiff should succeed, if at all, according to the rules of law which govern such cases. It was not claimed on the trial, and we suppose is not now, that the plaintiff could succeed if this is to be adjudged an equitable action. Hence the judgment should have been for the defendant. 1. The proof shows that, considered as an action in equity, the defendant must have judgment, because, (*a.*) The plaintiff or his grantor did not rescind the whole contract. (*b.*) The attempted rescission was not prompt, but too long delayed. (*c.*) After full knowledge of all the facts constituting the alleged frauds, the plaintiff's assignor affirmed the contract, by taking benefits under it. (*Wheaton* v. *Baker,* 14 *Barb.* 594. *Stevens* v. *Hyde,* 32 *id.* 182. *Lawrence* v. *Dale,* 3 *John. Ch.* 23. *Fisher* v. *Fredenhall,* 21 *Barb.* 82.) 2. That this action must be considered and decided as an equitable and not a legal action, is shown, (*a.*) By the pleadings. The issue joined is an equitable issue. The only difference in cases of fraud, between an equitable and legal action, is that in an equitable action you must allege and prove certain additional facts. You must allege and prove all you do in a legal action, and more too. Again; in equitable actions there are several defenses not good in legal actions. In this case the complaint is, in all strictness, in a suit in equity. It alleges the various transfers of the Walker bond and mortgage and judgment obtained on the bond, and final offer to return the same to the defendant, and demand for reconveyance. These facts are absolutely necessary in an equitable action—entirely immaterial and irrelevant in a legal action. The demand for relief is in

strict accordance with the facts alleged. The defendant, having sold the property, could not make restitution; hence the demand for relief in the alternative for the reconveyance of the property or payment of its value. Again; the second defense in the answer which was admitted on the trial, is a perfectly good one in equity. In a legal action it would be entirely frivolous. (*b.*) The cause of action, as proved, was a strictly equitable one. As to the transfers of the property received, and final offer to return to the defendant, the proof was made, and, even after the referee had decided that the action might be considered as a legal action, was retained against a motion to strike out. Hence, as the pleadings and proof show this to be an equitable action, it should have been decided as such; and the second defense having been admitted true on the trial, the judgment should be for the defendant. Formerly the equitable action for rescission could not be brought in the same court as the legal action for deceit. Though by the Code there is now one forum, the essential difference between these actions has not been changed, nor could it be. (*Ely* v. *Mumford,* 47 *Barb.* 633. *Reubens* v. *Joel,* 13 *N. Y.* 491. *Voorhis* v. *Childs,* 17 *id.* 358. *Goulet* v. *Asseler,* 22 *id.* 228. *Heywood* v. *Buffalo,* 14 *id.* 540.) Actions must be proven as pleaded. You cannot frame one issue and try another. You must try the issue in the pleadings; otherwise, it is not a variance, but a failure of proof. (*Smith* v. *Countryman,* 30 *N. Y.* 676. *Walter* v. *Bennett,* 16 *id.* 250. *Ransom* v. *Wetmore,* 39 *Barb.* 104. *Moore* v. *McKibbin,* 33 *id.* 246. *Craig* v. *Hyde,* 24 *How. Pr.* 313. *Gasper* v. *Adams,* 28 *Barb.* 441. *Bradley* v. *Aldrich,* 40 *N. Y.* 507. *Mann* v. *Fairchild,* 2 *Keyes,* 112.) Had the plaintiff asked to amend his complaint so as to allege a cause of action for deceit, the court could not grant his motion, as it would substantially change his cause of action, which is not allowed. (*Catlin* v. *Hansen,* 1 *Duer,* 327.

*Wooodruff* v. *Dickie*, 31 *How. Pr.* 167.) Much less could the plaintiff change without an amendment.

II. By the action and decision of the court below, the defendant has been deprived of the right of trial by jury. If this action is a legal action for damages, then the defendant had the right to a trial by jury guaranteed by the constitution. If it is an equitable action, the question of trial by jury is in the discretion of the court. It is just as much the denial of a right to reduce it to a matter of discretion, as to deny it altogether. This cannot be done, either directly or indirectly. It was done in this case, and the defendant had no legal remedy. (*Sands* v. *Kimbark*, 27 *N. Y.* 147.) 1. The defendant could not have stricken out any allegations of the complaint as irrelevant, under section 160 of the Code. All of them were consistent with the cause of action stated and the relief demanded. (*Cowenhoven* v. *Brooklyn*, 38 *Barb.* 9. *Moore* v. *McKibbin*, 33 *id.* 246.) 2. The defendant could not have demurred, as suggested by the referee, because, (*a.*) There was only one cause of action stated in the complaint. (*b.*) Even if there had been two causes of action improperly stated, demurrer is not the proper remedy, but a motion to make the plaintiff elect which cause he will prosecute. (*Meyer* v. *Van Collem*, 7 *Abb. Pr.* 224. *Lattin* v. *McCarty*, 7 *How. Pr.* 239.) (*c.*) The motion that the plaintiff elect we have made, and it has been denied. (See 3d point.) Hence the defendant had no mode provided by law by which he could insist upon and compel his right of trial by jury, if this is to be tried as a legal action. To be sure he did not try any of these remedies, but no party is to be held to try what cannot be, or lose his rights for failure to make such useless effort. 3. In cases where the right of trial by jury is undoubted, or where, by the complaint, the plaintiff sets out a legal action, but the defendant sets up an equitable defense, it is held that the person claiming the right of trial by jury must have claimed it below, or

he will be deemed to have waived it. This is true, because had he asked it in such case it would have been granted him by the court below as matter of right. In this case it was not a matter of right; hence the defendant lost no right by not asking. (*N. Y. and N. H. Railroad Company* v. *Schuyler*, 34 *N. Y.* 46. *Bradley* v. *Aldrich*, 40 *id.* 511.)

III. Even if it should be admitted that the plaintiff can thus unite in one complaint two causes of action arising out of the same transaction, the one equitable, the other legal, then it must be held that on the trial, on request, the plaintiff must elect which of the two he will proceed with. "He cannot carry water on both shoulders." Such was the rule before the Code. (*Rogers* v. *Vosburgh*, 4 *John. Ch.* 84. *Walter* v. *Bennett*, 16 *N. Y.* 250. *Craig* v. *Hyde*, 24 *How. Pr.* 313.) Hence the referee erred in his ruling refusing to make the plaintiff so elect; and also in his refusal to strike out evidence.

IV. Even regarding this action as a legal action for deceit well brought, yet the plaintiff is not entitled to judgment. 1. There is no proof that the defendant or any authorized agent of hers ever made any false statement, knowing or having reason to believe it to be false. To warrant any recovery for fraud, the evidence must show that the false statement was made knowing it to be false, with the intent to deceive. Deceit is the foundation of such actions, and that in its nature must be intentional. (*Marsh* v. *Falker*, 40 *N. Y.* 565, *and note at end of p.* 575. *Broom's Leg. Max.* 714, *and cases cited. Weed* v. *Case*, 55 *Barb.* 548. *Moore* v. *Noble*, 36 *How. Pr.* 388. *Hilliard on Torts*, *ch.* 1, § 29.) Such intentional deceit or fraud must be proven, beyond any reasonable doubt; it cannot be presumed. (*Nichols* v. *Pinner*, 18 *N. Y.* 300.) In this action the case shows no finding that any one intentionally misstated anything except David S. Spier. The referee finds that he did. This we say is entirely unsupported by proof.

As we have shown by our statement hereinbefore, there was the same identical proof of knowledge against the plaintiff's witness, Safford, as against David S. Spier. The only difference between them was, Safford was living, Spier dead. As to Safford, he finds "that it does not appear in proof that Levi Safford knew the representations he made were untrue." As to Spier, he finds he did know. This is construing evidence more strongly against the dead, who cannot defend themselves, than against the living, who can. We submit that such is not the rule, and especially in a case like this, where the plaintiff and his assignors wait till the pretended claim is nearly outlawed, after full knowledge of all the facts, (from December 1861 to April 1867,) till after Mr. Spier dies, and then immediately commence this action against his widow, who is admitted to be innocent in all respects. The death of Spier, it seems, was the birth of this action. We submit there is no proof of knowledge on the part of the deceased husband, Spier. (*a.*) He was in no way liable to pay the prior mortgages, or either of them. (*b.*) The proof shows that the county clerk's search was duly signed by him, went back to a good source of title, and was in the same condition when shown Safford, Mrs. Graves and the plaintiff, as when signed by the county clerk. The referee finds there is no proof to the contrary. (*c.*) The search was relied upon, and deceived three living persons—Mr. Safford, Mrs. Graves and the plaintiff. Why may it not be supposed it also deceived Mr. Spier. (*d.*) The only mode in which Mr. Spier can be held to have known of the mistake in the search, is to suppose that he and the county clerk, by conspiracy, got up a search to deceive, or that Mr. Spier, after the county clerk had made the search, so altered it or garbled it as not to show these two prior mortgages, thus committing forgery. Safford and Mrs. Graves and the plaintiff all examined it, and noticed nothing wrong about it. Safford, as land agent, was accus-

tomed to examine searches, especially those from this county clerk's office. Can such a supposition of fraud be sustained on such evidence? Is it not rather more in accordance with the rules of evidence to presume that Mr. Spier, like the other three, relied upon the search, and was himself deceived, and that there was an unintentional mistake in the search? 2. Mrs. Graves, the person who made the bargain and executed the deed to the defendant, and heard all these alleged false representations, did not rely upon and was not deceived by any representations made by David S. Spier. Simple misstatements, even although intentional, do not warrant a judgment. There must be reliance thereupon, and consequent injury. (*See cases above cited.*) (*a.*) Mrs. Graves herself swears, "I confided and trusted in Safford's representations. Upon his statements and the search I sold the property." She entirely ignores any reliance on what was said by David S. Spier. (*b.*) The nature of the subject matter about which the representations were made—title to land—is such that in case a search was produced it would be made the main reliance. They required a search, got one, relied upon it and were deceived thereby. It has even been held that an intentional misstatement about title will not constitute an actionable fraud, on the ground that any person who relies upon such statement, and does not examine the records, is guilty of negligence. (*Tallman* v. *Green*, 3 *Sandf.* 442, *and cases cited. White* v. *Seaver*, 25 *Barb.* 242.) (*c.*) As to the pretended statement that the search was a true search, the above rule should apply, because the search is obtained to prove the title, and it and the evidence of its verity is of a higher nature than any parol statement. The seal of the court and signature of the clerk is the proof of which even courts must take notice and recognize. It is reasoning in a vicious circle, to say that a person is not warranted in relying upon a parol statement as to title, because he should procure a search or have the records examined, and

then say that any parol statement about that very search is actionable. But as we have said, this whole claim of fraud is disposed of by supposing either that the county clerk unintentionally made an error in the search, and thus all were deceived, or by supposing that the search was so made as not to be fully understood by all the parties examining it. This is the more rational explanation, and may be the very one the lawyer Graves applied to, after hearing of the existence of these two mortgages, gave him. We submit it should be the one adopted by this court, especially as against innocent living defendants and deceased accused witnesses, and in favor of persons who have held their peace during about five years, while such witness was living, and could have been heard to give his explanation.

V. It is true the referee has found that the witness Safford and David S. Spier represented that the farm was worth more than the mortgage, while he has found as matter of fact that it was worth less. But this was not made any ground for his decision, neither indeed could it be. 1. The referee, in stating the representations on which Mrs. Graves exchanged, only mentioned those as to title. Also, in stating in what the statements were false, he only states as to title. 2. A false statement of value would be as to matter of opinion, and not fact, and hence is no ground for action. 3. But as to the matter of the value of the premises, Mrs. Graves did not rely on any statements of Safford or Spier, but wrote to a friend, received an answer, and relied upon that.

VI. This action is brought on account of fraud in the transfer of a certain bond and mortgage, and is brought by the assignee and purchaser of said mortgage, with full knowledge of all the facts. He cannot offer to return them to a third party and claim damages on account of fraud practiced upon his assignor. (*Borst* v. *Baldwin*, 30 *Barb*. 180.)

Graves *v.* Spier.

VII. Had the plaintiff made out an equitable cause of action for rescission, such a cause of action might possibly be assignable; but a legal cause of action for deceit is not, and never was, assignable. (*Prosser* v. *Edmonds,* 1 *Young & Coll.* 481. *McMahon* v. *Allen,* 34 *Barb.* 56. *Zabriskie* v. *Smith,* 13 *N. Y.* 333, *at foot of page. Lamphere* v. *Hall,* 26 *How. Pr.* 510, *and cases cited. Shoemaker* v. *Kelley,* 2 *Dall.* 213; 1 *Yeates,* 245.) It is sometimes said in the books, that whatever passes to personal representatives is assignable. But these dicta are expressly disapproved in *McMahon* v. *Allen,* (34 *Barb.* 65;) *Sheldon* v. *Wood,* (2 *Bosw.* 278;) *Hyslop* v. *Randall,* (4 *Duer,* 663.) If the cases in which these dicta occur, (such as *Haight* v. *Hayt,* 19 *N. Y.* 464,) are carefully examined, it will be found they decide that whatever is assignable passes to the personal representatives; but not the converse—that whatever passes is assignable. The proposition refers to whatever passed to the personal representatives at common law, for the rule holds in the United States courts and in England. (*Comegys* v. *Vasse,* 1 *Pet. U. S.* 213. *Raymond* v. *Fitch,* 2 *Crompt. Mees. & Wels.* 588.) Hence when, by the Revised Statutes, the range of causes of action that pass to the personal representatives is enlarged, that does not, *per se,* make those which were added assignable. The statute says nothing about assignees, and hence assignability is not affected thereby. (*Thurman* v. *Wells,* 18 *Barb.* 510.) Again, the cases of *Zabriskie* v. *Smith,* and *Lamphere* v. *Hall,* (before cited,) which expressly hold that such causes are not assignable, were lately decided—long after the Revised Statutes.

VIII. Even if assignable, the plaintiff never acquired title. 1. If it be considered an equitable action, then the assignment of the bond and mortgage would be necessary to give the plaintiff title. It is not claimed that the stamps on them were sufficient, and they were finally withdrawn, or, as the case has it, were not offered in evidence. 2. Con-

Graves *v.* Spier.

sidered as an action for damages, the transfers C and H, would not transfer the title. They contained a power of attorney, and hence are void because they were not stamped with a fifty cent stamp. (*Stamp Law,* §§ 158, 170.) The introduction of papers was duly objected to.

IX. The measure of damages adopted by the referee was not the true one. The facts found, on which it rests, were contrary to the evidence given and received, and the rules of law applicable; and the plaintiff's evidence on that point given, received and duly objected to, was improper, and that offered by the defendant, rejected and duly excepted to, was legal and proper. 1. The true rule of damages would be the difference between the Walker bond and mortgage, as they were represented to be, and as they in fact were. There is no proof of the value of the bond and mortgage on either supposition. The rule adopted would seem to be the amount of the prior incumbrances. This is the rule in case of a deed with covenants. But it has no application to this case. The bond is the debt. The mortgage is not valid separated from it. If the bond is good it is immaterial what the mortgage is. Besides, this theory is absurd upon its face. A second mortgage may be perfectly good for its full amount, provided there is property enough to pay both. 2. The facts found in deciding damages are against law and the evidence. (*a.*) The finding that the judgment of Van Hoesen was a prior lien to the mortgage. The mortgage was for purchase money. It needs no authority to show that a judgment against the mortgagor cannot be prior to a purchase money mortgage made by him. (*b.*) The finding that the Walker bond was worthless October 1, 1861, is against the evidence and law. This supposes the maker, Walker, insolvent. Insolvency, like fraud, must be proven. (*Walrod* v. *Ball,* 9 *Barb.* 271.) Here the proof, like the presumption, was that he was solvent. (*c.*) The finding that the mortgage, if as represented, would have been

worth, October 8th, 1861, $8852.03, is unsupported by, and contradicted by, the evidence. The referee also finds that on that day the land conveyed by the mortgage was worth only $8193.75. Hence the mortgage was worth more than the land. 3. The evidence admitted on proof of damages was improper. (*a.*) As the wrong rule of damages was adopted, all evidence in support of and in accordance with such rule must be wrong. (*b.*) The proof of the value of the farm was improper. The knowledge of it was necessary to fit a witness to give proper testimony of value, but as an independent fact it is immaterial. So also as to evidence as to the condition and quality of the farm. (*c.*) The evidence of the plaintiff as to the value of the Walker bond and mortgage was improper, and his testimony untrue, and it was so found by the referee. He did not show that he knew anything about the value of the farm covered by the mortgage, the responsibility of Walker, the maker of the bond, or that he had any knowledge of the value of bonds and mortgages in any market. To give an opinion the witness must show qualifications peculiar to himself as connected with the subject matter. (*d.*) The evidence of the amount of surplus moneys received by Mrs. Graves clearly had nothing to do with damage arising from the plaintiff's alleged fraud. (*e.*) If the referee was right in admitting evidence as to the amount received from surplus moneys, he was clearly wrong in granting the plaintiff's motion to strike out evidence as to what Mrs. Graves sold the farm for, and thus realized. (*f.*) The proof of amount of surplus moneys and the judgment rolls, showing the sale in 1863, were clearly improper, even on the question of the value of the farm in 1861. A sale at or about the time is some slight evidence of value, but a sale two years after, is none; hence, as we have shown, a wrong rule of damages was adopted by the referee. It was supported by improper evidence, and his findings on the wrong rule thus improp-

Graves *v.* Spier.

erly proven were against such evidence and the presumptions of law, and the judgment is therefore wrong and should be reversed.

X. If we are right in our former points, then the referee erred in denying the motions of the defendant for a nonsuit at the conclusion of the plaintiff's testimony, and again at the close of the whole testimony.

XI. As this is an equitable action, and a   he facts proven and uncontradicted, (*point* 1, *subd.* 1,) show that such action can in no way be maintained, this court should not only reverse the judgment entered upon the report of the referee, and grant no new trial, but should grant a judgment absolute for the defendant, with costs. (*Bradley* v. *Aldrich*, 40 *N. Y.* 504. *Edmonston* v. *McLoud*, 16 *N. Y.* 543.)

*W. F. Diefendorf*, for the respondent.

I. This action is brought to recover damages of the defendant, growing out of false and fraudulent representations made by her in negotiating the sale and transfer of a certain mortgage to Margaret S. Graves; and to warrant a recovery, it was incumbent upon the plaintiff to establish, on the trial, that the defendant, or her agents for her, perpetrated a fraud upon Mrs. Graves, the original assignor of the cause of action, and that damages ensued to her therefrom. 1. Assuming that burden, we will first briefly advert to the proof establishing the fraud. The principal evidence upon this point appears from the testimony of Solomon Graves, the plaintiff, Margaret S. Graves, and Levi Safford. The representations were principally made by the defendant's husband, David S. Spier, and Levi Safford, a broker, both of whom acted as the agents of the defendant. There is no positive proof in the case that the defendant, personally, made any representations, or knew that any were being made at the time. There are, however, circumstances in the case, strongly tending to prove such knowledge on her part. The rep-

resentations were made at different times during the negotiations for the sale and exchange of Mr. Graves' premises in Geneva, described in the complaint, for a mortgage on premises in Rensselaer county, N. Y., and consisted in the statements that the said mortgage was a good mortgage upon premises worth more than the face of the mortgage ; that it was the first and only mortgage, lien or incumbrance of any kind upon the premises in it described, and that a search purporting to be a search of the premises, and from which, said mortgage appeared to be the only lien and incumbrance, was a true search—affirming personal knowledge of all the statements thus made. Graves testified that Spier said it was a good mortgage on property worth considerably more than the face of the mortgage. That " the mortgage was the only lien on the property. We had considerable talk about it." That " there was no lien on the premises except this mortgage; that it was given for balance of the purchase money." And when the witness inquired of Safford why he had not brought the search, and stated his unwillingness to go on without it, Safford professed personal knowledge of the incumbrances, and said he " knew all about the premises, and that the Walker mortgage was the only incumbrance on the place." That " I need not send for a search, as he knew all about the property, and this was the only lien on the property." Spier said it was the only lien. Spier also produced a search, which purported to be a search of the premises, representing the Walker mortgage as the only lien, and said the search was a true one, and the property was all right." Mrs. Graves testifies that she heard " Safford say it was the first mortgage." That Mr. Graves, her husband and agent, " informed her so also, frequently, and he had charge of this matter from the beginning to the end. Safford said the place had often passed through their office." Levi Safford testifies: " I made representa-

tions to Mrs. Graves about the Schodac farm, and made them in behalf of Mrs. Spier. They asked me about its value, title and incumbrance. I told them there had been two mortgages, but that Spier said he had paid them off. I was authorized by Mr. Spier to state to Mrs. Graves that the premises were free and clear, except the Walker mortgage, and I did so represent to Mrs. Graves previous to the exchange." It is admitted, and proved in the case, that the representations were false in fact; that there were two mortgages and one judgment, prior liens. It is both admitted and clearly proven, that David S. Spier and Levi Safford were the agents of the defendant to negotiate the mortgage and effect the exchange. It also appears that David S. Spier was the husband of the defendant, and had the general management of her business. She also knew that Safford was negotiating the premises for the mortgage, and that he delivered the mortgage and received the deed for the defendant. The assignment of the mortgage was executed by her, and the deed of the Geneva property delivered to her by Safford. Spier and Safford conducted the business, throughout, in the name of the defendant, and with her knowledge and assent. They were, by virtue of the relation they bore, as well as a matter of fact, the agents of the defendant to effect the exchange. The referee expressly found that both Spier and Safford acted as the duly authorized agents of the defendant in negotiating the mortgage and exchange. The express object of the agency was to purchase the Geneva property for the defendant, and negotiate her mortgage in payment therefor. It follows, then, that whatever statements or representations were made by Spier and Safford during the negotiations with regard to the mortgage, were directly within the scope of their authority to purchase the Geneva property and turn out in payment therefor the Walker mortgage, and were binding upon the principal receiving the fruit.

It is useless to particularize and refer to emphatic portions of the evidence relating to the representations made. The proof is clear, emphatic and absolutely overwhelming, that the defendant by her agents represented the Walker mortgage to be the first, and only, incumbrance on the premises in Schodac upon which it was a lien; that it was worth more than the face of the Walker mortgage; that the search was true; professing personal knowledge of the statements made. That the defendant, through an unscrupulous agent and husband, with the aid of Safford and a false search, deliberately defrauded, and intended to defraud, Mrs. Graves out of a house and lot, worth more than the price agreed to be paid, by inducing her through willful, false and fraudulent representations to receive a worthless mortgage in payment therefor, is too apparent to admit of a shadow of doubt. But it is claimed that the defendant was ignorant of the fraud perpetrated by her agents at the time of the negotiations. She knew the trade was going on, and what kind of a mortgage she was transferring for this valuable Geneva property. She knew of the existence of the mortgages on the Schodac property, and under the proof it would be exceedingly charitable to concede that she was not an active participant in the fraud; but that after a knowledge of the fraud she retained, and still, by every means at her command, persists in retaining the fruits of this unrighteous transaction, is certain; although the fraud has been fully proven by her own instruments, as well as by other testimony upon which a shadow of suspicion does not and can not rest. And she has utterly failed to controvert it. The object of the tender was to apprize the defendant of the fraud, and give her an opportunity to rescind and restore, or retain and ratify. It is proven by the testimony of George Proudfit, and admitted by the defendant, that she received and retains the fruits. The defendant thereby confirmed and ratified the acts of her agents, and adopted

the instrumentalities by which the ill gotten gain was obtained.

2. The plaintiff's assignor and agent confided in the representations; this is apparent from the testimony. Upon what else could they rely? They knew nothing of the mortgage, or the property upon which it was a pretended lien. They did not even know that the search was genuine. They relied upon the defendant's representations "that it was a true search." Distant two hundred miles from the records, they were strenuously urged by the defendant's agents to rely upon their statements in respect to the search and incumbrances, and they had a legal right to do so; and it hardly lies with the defendant to question it. Mr. Graves made no inquiry of Mr. Richardson, clerk of the assembly, as to the incumbrances, but simply as to the value. Then again, the inquiry is not whether Mrs. Graves placed her sole reliance upon the representations made. Were they the inducement, without which she or her agent would not have taken the mortgage, or were they the controlling cause? We think it manifest that the representations were the sole inducement; and if there can possibly be any doubt upon the subject, the law settles the question upon the testimony of the plaintiff and wife, who swore that they relied on and confided in the representations. (*Seymour* v. *Wilson,* 14 *N. Y.* 567. *Thurston* v. *Cornell,* 38 *id.* 287.) The referee expressly found that the plaintiff and Mrs. Graves confided in the representations made, and were thereby induced to exchange and convey her property for the mortgage. The statements of Spier and Safford were of such a positive and definite character that it was only natural for Mrs. Graves to credit them. The claim that because Mr. Graves made inquiry, through the mail, of Richardson, who professed no knowledge of the premises or incumbrances, or as to the value of the premises, Mrs. Graves should lose her right to trust or confide in the

false representations made, and be denied a recovery, comes with bad grace, and little force, from a wrongdoer who clings to the gains procured by the fraud of a "tricky" man. It remains to be seen, whether the authorities will sustain a recovery founded upon the proof in this action.

II. It is urged that the recovery in this action cannot be sustained for the reason that the defendant was ignorant of the fraud perpetrated by her agents at the time of the transfer; that she did not in person make or authorize any representations, and should not, therefore, be held responsible for the misconduct and fraud of her agents, made without her knowledge. But the defendant received and persists in retaining the fruits and avails of the fraudulent transaction, reaping all the advantages enuring from the fraud of her agents. Spier and Safford were certainly acting within the scope of their authority, which was to effect the exchange, to negotiate the mortgage in payment for the Geneva property. The representations were made for her benefit, and enured exclusively to her advantage. In such cases, the party for whose immediate benefit the representations were made cannot retain the fruits and claim the advantages of the bargain, without adopting the instrumentalities through which it was obtained. This is a familiar and elementary principle of law, and the doctrine is affirmed in numerous and controlling adjudged cases.

We will briefly refer to some of the cases and the terms employed in stating the doctrine. In *Parsons on Contracts*, (*vol.* 1, *p.* 62, 2*d ed.*,) it is laid down, that "a principal is liable for the fraud or misconduct of his agent so far, that on the one hand he cannot take any benefit from any misrepresentation fraudulently made by his agent, although the principal was ignorant and innocent of the fraud; and on the other hand, if the party dealing with the agent suffers from such fraud, the principal is bound to make him compensation for the injury so sustained; and al-

Graves *v.* Spier.

though the principal be . innocent, provided the agent acted in the matter as his agent and distinctly within the line of business intrusted to him." "And though there be no actual fraud on the part of the agent, yet if he makes a false representation as to the matter peculiarly within his own knowledge or that of his principal, and thereby gets a better bargain for his principal, such principal, although innocent, cannot take the benefit of the transaction." (*Ib.*) "If an agent makes false representations inducing purchasers to enter into a contract, the principal is affected by such representations the same as if made by himself." (*Sandford* v. *Handy,* 23 *Wend.* 259.) " A principal is liable for the false representations of his agent, made. in and about the matter for which he was appointed agent, not on the ground of express · authority given to the agent to make the statement, but on the ground that as to the particular matter for which the agent is appointed, he stands in the place of the principal ; and whatever he does or says in and about that matter, is the act and declaration of the principal ; the principal is just as liable as if he had personally done the act or made the declaration." " The power of the agent to render the principal liable for representations, flows from his mere appointment to do the act or transact the business in and about which the representations are made." (*Sharp* v. *Mayor of N. Y.,* 40 *Barb.* 257.) "The vendor of land is responsible for material misrepresentations in respect to its location and quality as made by his agent without express authority, and in the absence of any actual knowledge by either the agent or principal whether the representations were true or false." " One who, without knowledge of its truth or falsity, makes a material misrepresentation, is guilty of fraud as much as if he knew it to be untrue." (*Bennett* v. *Judson,* 21 *N. Y.* 238.) " So long as the principal retains the benefits of the dealing, he cannot claim

immunity on the ground that the fraud was committed by his agent and not by himself. This is an elementary doctrine." (*Ib.*) "The principal cannot enjoy the benefits of a bargain made by an agent without adopting the instrumentalities by which it was consummated." (*Elwell* v. *Chamberlin*, 31 *N. Y.* 611.) On page 619 the court says that "if an agent defrauds a person with whom he is dealing, the principal, though not having authorized or participated in the wrong, is nevertheless liable so long as he retains the benefits of the dealing, and while occupying that position, cannot claim immunity for the fraud of his agent." The doctrine of *Bennett* v. *Judson* is fully sustained and reaffirmed by a unanimous court. "When an agent, acting within the scope of his actual authority, perpetrates a fraud for the benefit of his principal, and the latter receives the fruits of it, he thereby adopts the fraudulent acts of the agent." (*Smith* v. *Tracy*, 36 *N. Y.* 79.) "These authorities rest upon the principle that when a party clothes another with authority to speak in his behalf, and indorses him to third persons as worthy of trust and confidence, those who are misled by the falsehood and fraud of the agent, are entitled to impute it to the principal. The latter will not be permitted to retain the fruits of a transaction infected with fraud, whether the deceit which he seeks to turn to his profit was practiced by him or by his accredited agent. In such a case, he cannot separate the legal from the illegal elements of the contract, and appropriate the advantages it secures, while he rejects the corrupt instrumentalities by which they were obtained." (*Ib.*) See also page 84, where the learned judge draws the line and "sharply defines" the distinction between cases of warranty involving the existence and extent of the power of the agent, and cases of fraud of the agent acting within the scope of his authority. Here, again, the Court of Appeals unanimously reaffirm the doctrine of *Bennett* v. *Judson*, (*supra*.) In *Craig* v. *Ward*,

at the next term of the Court of Appeals, that court again fully reaffirmed the doctrine of *Bennett* v. *Judson.* Judge Hunt, in delivering the opinion, in which the whole court concurred, said: " I concur fully in the propositions laid down at the trial of that case, (referring to *Bennett* v. *Judson,*) that having received the fruits of the bargain, the defendant was liable for the fraud of his agent, although he did not authorize the statement, or know that it was made, or whether it was true or false." (1 *Pars. on Cont.* 60, 2*d ed. Sandford* v. *Handy,* 23 *Wend.* 259. *Sharp* v. *Mayor of N. Y.,* 40 *Barb.* 257. *Bennett* v. *Judson,* 21 *N. Y.* 238. *Elwell* v. *Chamberlin,* 31 *id.* 611. *Smith* v. *Tracy,* 36 *id.* 79. *Craig* v. *Ward,* 3 *Abb. Pr. N. S.* 235. *Hunter* v. *Hudson River Iron and Machine Co.,* 20 *Barb.* 494. *Craig* v. *Ward,* 36 *id.* 377. *Henry* v. *Root,* 33 *N. Y.* 526. *Fitz Hugh* v. *Sackett, Court of Appeals, March,* 1866. *Law Ex. Rep., vol.* 2, *p.* 259. *Law Rep. Q. B. vol.* 2, *p.* 511.)

3. The defendant was liable for the fraud, and an action lies for the damages sustained. The plaintiff's assignor had the election to rescind the contract upon the discovery of the fraud, or affirm it, and claim compensation for the damages sustained. " Action in affirmance of the contract will not affect or preclude a recovery of damages for the fraud." A party may rescind or affirm the contract, and recover damages for the loss sustained by the fraud. (*Van Epps* v. *Harrison,* 5 *Hill,* 63. *Bradley* v. *Bosley,* 1 *Barb. Ch.* 125.) " A party does not waive his right to damages for fraud by merely acting in affirmance of the contract, after the discovery of the fraud." " This doctrine has never been questioned." (*Whitney* v. *Allaire,* 1 *Hill,* 485. *S. C.,* 4 *Denio,* 554; 1 *Comst.* 305.) " Case lies for a false representation, whether made on the sale of real or personal property, and whether it relates to the title or some collateral thing attached to it." (*Culver* v. *Avery,* 7 *Wend.* 380.) " An action lies for fraudulent representations as to title and as to incumbrance." (*Whitney* v. *Allaire,* 1

Graves *v.* Spier.

*Comst.* 305. *Ward* v. *Wiman,* 17 *Wend.* 193. *Clark* v. *Baird,* 9 *N. Y.* 183, 196, 197. *Haight* v. *Hayt,* 19 *id.* 464.) The questions involved in the case of *Haight* v. *Hayt,* (*supra,*) are precisely analagous to those raised herein, and it is quite decisive of the present case upon all the real questions involved, viz., the false representations, the right of the assignor to maintain the action, and the measure of damages. "Every contracting party has an absolute right to rely on an express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the base of a mutual agreement." (*Mead* v. *Bunn,* 32 *N. Y.* 275. *Culver* v. *Avery,* 7 *Wend.* 380. *Van Epps* v. *Harrison,* 5 *Hill,* 63. *Bradley* v. *Bosley,* 1 *Barb. Ch.* 125. *Whitney* v. *Allaire,* 1 *Hill,* 485. *S. C.* 4 *Denio,* 554; 1 *N. Y.* 305. *Ward* v. *Wiman,* 7 *Wend.* 193. *Clark* v. *Baird,* 9 *N. Y.* 183. *Haight* v. *Hayt,* 19 *id.* 464.)

4. It was claimed upon the trial, and may be urged here, that there is no proof of any fraudulent intent on the part of Spier and Safford, the defendant's agents. That there was no deceit; that the agents acted in good faith, believing that the representations made were true; and the action cannot be maintained for that reason. It seems to us that the proof, to which we have already referred, is so clear and emphatic, the intent to deceive so manifest from the evidence, which is entirely uncontroverted, that the position is untenable, and cannot be seriously entertained by the counsel. They must be presumed to have intended the natural and ordinary consequences resulting from their acts. Spier and Safford both knew of the prior mortgages, previous to making the representations, and there is no evidence that Spier had any reason to believe that they were paid off, and no satisfactory evidence that Safford had reason to believe that they were paid off. Safford's evidence is contradictory, and is fatal to the position in either aspect. They represented and assumed to know the search to be true. Under this proof, it seems

to us it would be stultifying to suppose that they acted in good faith in making the representations. There was manifest design—deliberate intent to defraud. And such, in effect, is the finding of the referee. It is, however, quite immaterial whether or not Spier and Safford acted in good faith. The representations made by them were material, and were false in fact. The language employed, and positive manner assumed by them, in making the statements, imported personal knowledge of the premises, their value, title, incumbrances, the search and records thereof. They did not state that their information was derived from secondary sources, but asserted personal knowledge thereof. They said to Mrs. Graves, you need not get a search; we know all about the premises and mortgage. We have owned the premises, and they have frequently passed through our hands. In this way they actually induced the plaintiff not to send for a search, or make any further inquiry concerning the mortgage, but to accept their statements as true, and confide in them. False statements made in the positive manner and terms employed by Spier and Safford, professing personal knowledge of their truth, have always been held actionable, by all the authorities. Misrepresentations thus made are held actionable when relating to the solvency of third persons in cases where the party making them derived no personal benefit. The authorities which have sought to restrict the doctrine of the case of *Bennett* v. *Judson*, (21 *N. Y.* 238,) do not in the least conflict with the recovery in this action, and would sustain the judgment upon such evidence. (*Marsh* v. *Falker*, 40 *N. Y.* 562. *Weed* v. *Case*, 55 *Barb.* 535.) In *Marsh* v. *Falker*, (*supra*,) Judge Daniels, in commenting upon *Bennett* v. *Judson*, says: "But the agent went beyond the point of representing to the purchaser merely that which he had good reason to believe was the truth. For he made the representations in such a manner, and in such terms, as were calculated to pro-

duce the conviction in the mind of the purchaser that he had personal knowledge of their truth. That instead of being the result of information derived by him, he had actual knowledge, acquired by occular inspection and personal examination. That he made the statements on which the purchaser relied upon what he knew, as distinguishable from what he had heard. This was not true, and he himself knew at the time it was not true, and from those circumstances, the intent to deceive the purchaser could very naturally be inferred." So in *Weed* v. *Case*, Justice Bacon says, in commenting on *Bennett* v. *Judson* : "The statements on which the purchaser relied, were made in respect to what the party making them assumed to know." Besides, those cases, in the facts and the law applicable thereto, are clearly distinguishable from this, and the court were divided on the questions therein discussed. We submit, then, that the defendant is clearly liable in either view of the case, and our right to sustain this recovery is established by a formidable array of controlling authorities. The exceptions are not well taken, and the motion for a nonsuit was properly denied.

III. It is insisted that there is no proof of damages; and also that the referee erred in admitting and rejecting evidence, and applying the rule of damages. The measure of damages is the difference between the value of the Walker mortgage as it really was, and its value as it would have been had the representations been true. (*Bradley* v. *Bosley*, 1 *Barb. Ch.* 125.) This rule has been extended in cases of fraud, and the defendant held chargeable with all the damages resulting from the false representations. (*Whitney* v. *Allaire*, 1 *Comst.* 305. *Van Epps* v. *Harrison*, 5 *Hill*, 69. *Pitcher* v. *Livingston*, 4 *John.* 1; 13 *id.* 1.) "In cases of covenant, in the absence of fraud, the damages would be the consideration and interest." (*Grant* v. *Tallman*, 20 *N. Y.* 191.) "But in cases of fraud, it is agreed on all hands, there must be full indemnity." (*Dim-*

Graves *v.* Spier.

*mick* v. *Lockwood*, 10 *Wend.* 142. *Crouch* v. *Parker*, 40 *Barb.*
94. *Sharp* v. *Mayor of New York, Id.* 258. *Sedg. on Dam-
ages*, 4th ed. 232, 661, *and cases cited.*) In *Haight* v. *Hayt*,
(19 *N. Y.* 464,) a more liberal rule than the one adopted
by the referee in this action was sustained in the Court of
Appeals. (*Opinion of Grover, J., p.* 471; *Denio, J., p.* 476.)
The measure of damages in cases of fraud is the loss sus-
tained by the injured party. There must be indemnity.
(*Eli* v. *Mumford*, 47 *Barb.* 633.) The plaintiff submitted
to the referee three theories of computing the damages
upon this basis: 1. The Walker mortgage as it was repre-
sented, less the amount actually received from it, which
was the surplus moneys obtained in 1863 from the fore-
closure of the premises in it described, which would leave
as a measure of damages, at the date of the referee's re-
port, $12,238.74. Graves testified that the mortgage when
transferred was worthless, and his testimony is uncontro-
verted. This would leave the damages the full amount
of the mortgage, and over $13,000. 2. The difference
between the Walker mortgage at the time of the transfer,
and the value of the premises covered by it, over and above
the amount of all the prior liens at the same time. The
value of the premises at the time of the exchange was
$57.50 per acre. In this view, the measure of the dam-
ages would, at the date of the report of the referee, have
been $9734.66. 3. The amount of the incumbrances prior
to the Walker mortgage, at the time of the exchange in
1861, with interest to the date of the referee's report, make
the measure of damages $7652.22. The referee adopted
the last theory, and reported for the said sum of $7652.22,
for which amount, with costs, judgment was entered. The
counsel claimed that the advance realized by Mrs. Graves
on a resale of the Schodac farm, purchased by her at the
foreclosure sale, should. have been deducted from the
damages, and that the referee erred in rejecting the proof
offered. She purchased the property at a public legal sale,

and it became absolutely hers. The defendant is no more entitled to have that advance applied in mitigation of damages in this action, than Mrs. Graves or the plaintiff would have been authorized to hold her responsible for the losses, had any ensued. The counsel cited no authorities to sustain this position, and we apprehend none can be found. There is no principle of law warranting such a claim. But the proof establishes that the actual and legal damages sustained by Mrs. Graves, and which the plaintiff as assignee was entitled to recover in this action, greatly exceeded the amount assessed and found by the referee. No injury has been done the defendant, and she has not been prejudiced by the ruling of the referee. If any error was committed by him on the trial it has been entirely cured by the rule of damages finally adopted in the decision of the case. The amount of the recovery is the least warranted by the evidence, in any legal aspect of the case. It came far short of indemnity, and did not exceed in amount the sum actually due and unpaid upon the prior incumbrances; and the premises, at the time of the exchange, did not equal in value the face of the Walker mortgage. This is the rule in cases of covenant, in the absence of fraud. The bond was worthless, and were it otherwise it would be immaterial, as the representations related to the mortgage, and the reliance was upon it. Then again it was for the defendant to show Walker's ability to pay, which they did not and could not do. When it is apparent from the evidence that the complaining party has not been injured or prejudiced by the improper admission or rejection of evidence on the trial, or that the error has subsequently been cured, the judgment will not be reversed for such error. This is well settled. (*Wells* v. *Cone*, 55 *Barb.* 585. *Bort* v. *Smith*, 5 *id.* 283–285. *Crary* v. *Sprague*, 12 *Wend.* 41. *Walker* v. *Dunspaugh*, 20 *N. Y.* 170. *City Bank* v. *Dearborn*, 20 *id.* 244.)

IV. The cause of action is assignable; and the excep-

tions to the decision of the referee in that respect are untenable. The wrong done was an injury to the estate and property of Mrs. Graves, such as would survive to her executors or administrators, under the statute. The following causes of action are assignable under the statute, for torts: Section 1. "For wrongs done to the property, rights or interests of another for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or after his death, by his executors or administrators against such wrongdoer, and after his death, against his executors or administrators, in the same manner and with like effect, in all respects, as actions founded on contracts." Section 2. "But the preceding section shall not extend to actions for slander, for libel, or to actions of assault and battery, or false imprisonment, nor to actions on the case for injury to the person of the plaintiff, or to the person of the testator or intestate of any executor or administrator." (3 *R. S.* 746, §§ 1, 2, *5th ed.*) The wrong done by the defendant affected the property, rights and interests of Mrs. Graves, and it is not embraced within the exceptions mentioned in the second section of the statute. The case of *Haight* v. *Hayt*, (19 *N. Y.* 464,) is decisive of this case. That case involved precisely the same question here raised. On page 468, Judge Grover says: "The exceptions contained in the 2d section manifest the intention of the legislature that all other actions founded on tort should survive." See also, on page 474, the pointed disposition of this question by Denio, J., the same judge who delivered the opinion in *Zabriskie* v. *Smith*, (13 *N. Y.* 333,) but where his attention was evidently not called to the statute. He says: "The action survived against the representatives of Hayt, the original defendant. (2 *R. S.* 447, §§ 1, 2.) The cause of action was a wrong done 'to the rights and interests' of the plaintiffs. The exception in section 2 shows, if there was otherwise any doubt, that the prior section was in-

tended to embrace this case." To the same effect is *Dininny* v. *Fay*, (38 *Barb.* 18,) where JOHNSON, J., in equally strong terms, held that a cause of action in tort, affecting rights and property, was assignable. The criterion is, does the action affect the estate and survive to the executors? (*Haight* v. *Hayt*, 19 *N. Y.* 464. *McKee* v. *Judd*, 12 *id.* 625, 626. *Richmeyer* v. *Remsen*, 38 *id.* 206. *Dininny* v. *Fay*, 38 *Barb.* 18. *Johnston* v. *Bennett*, 5 *Abb. Pr., N. S.*, 331. *The People* v. *Tioga C. P.*, 19 *Wend.* 73. *Mackey* v. *Mackey*, 43 *Barb.* 58. *Byxbie* v. *Wood*, 24 *N. Y.* 607.) The case of *Zabriskie* v. *Smith* is not authority against us. Nor did Judge Denio intend, in his decision, to hold that cases of this kind were not assignable, as is manifest from his language in *Haight* v. *Hayt*. His attention was not called to the statute, in *Zabriskie* v. *Smith*. Indeed no authority is produced by the defendant, sustaining his position. The nearest approach to it is *Borst* v. *Baldwin*, (30 *Barb.* 180.) That was a special term decision, was a different case, and turned upon the point that the cause of action for the fraud or wrong was not in fact assigned, and that it did not pass as an incident with the simple assignment of the judgment. Whatever the judge said beyond that, is *obiter*. Then again, it of course cannot stand as authority against the decision of the general term in our own district, and the controlling authority of the Court of Appeals. In this case the assignment is in due form, and is properly executed and stamped. No objection was made to the want of cancellation of the stamps on these assignments. Besides, the cancellation is entirely immaterial. The stamps were duly affixed—put on in good faith before execution of the instruments, as was shown on the trial. The objection is purely frivolous. The want of cancellation would not avoid the instruments. Moreover, the authorities uniformly hold that there must be an intent to defraud the government, or evade the provisions of the law, to invalidate the instrument, and there can be no presumption of

fraudulent intent. (*Schermerhorn* v. *Burgess*, 55 *Barb*. 422. *New Haven Co.* v. *Quintard*, 6 *Abb. Pr.*, *N. S.*, 128. *Vorebeck* v. *Roe*, 50 *Barb*. 302. *Beebe* v. *Hutton*, 47 *id.* 187.)

V. It is claimed that this is an action in equity to rescind the contract, and not an action at law to recover damages; and that a recovery for damages cannot be maintained, under the pleadings in this action. The usual allegations necessary to recover damages for fraud and deceit in an action at law are fully set out in the complaint, with unnecessary prolixity. It also appears affirmatively, on the face of the complaint, that numerous acts were done by Mrs. Graves in affirmance of the contract; in short, that she did affirm it, and resorted to every measure under it to realize, after a discovery of the fraud. It also appears upon the face of the complaint, that the defendant had conveyed the premises to one Biggs, and he to several persons, in parcels, and that it was not in the power of the defendant to restore the premises. Also, that the cause of action, and claims for fraud and deceit, for which recovery was sought, were assigned to the plaintiff. That Mrs. Graves was damaged in the sum of the value of the Geneva premises, which loss "and the fruits of said transfer enured entirely to the benefit and advantage of the defendant, who still retains the fruits and benefit derived therefrom." And demands judgment for $8500, interest and costs. The allegations of a reassignment of the Walker mortgage and judgment, and at the same time apprising the defendant of the fraud, were material to show an affirmance by the defendant of the acts of her agents. It is apparent from other parts of the complaint, that it was not done with a view to rescind. It is manifest, therefore, upon the face of the complaint, that the action is for damages, and could not have been for rescinding the contract; because the allegations, though unnecessarily prolix, were sufficient to sustain a recovery for damages, and insufficient, demurrable and utterly incon-

sistent with a claim to rescind. The alternative prayer for relief is immaterial. We plead the facts—set out the case at unnecessary fullness, it is true. The defendant was not prejudiced by this. If this were otherwise, and there be doubt about the character of this action, or the formality of the complaint, we are not to be driven out of court for that reason. The proof clearly establishes a cause of action for damages. When an answer is interposed, the prayer for relief becomes entirely immaterial. (*Code*, § 275.) " The case made by the complaint, and the limits of the issue, alone determine the extent of the power of the court" to grant relief. (*Marquat* v. *Marquat*, 12 *N. Y.* 341.) The form of the pleadings where an answer is interposed, does not limit the right to give evidence upon the trial, nor impose upon the court any restraint as to the nature or extent of the relief to be given. (*Ib.*) " The very object of the new system of pleading was to enable the court to give judgment according to the facts stated and proved, without reference to the form used, or to the legal conclusions adopted by the pleader." (*Wright* v. *Hooker*, 10 *N. Y.* 59.) " It is sufficient if the facts be stated in the complaint which warrant the judgment, although the grounds upon which the judgment was rendered were other than those evidently contemplated by the pleader." " This rule is now well settled." (*N. Y. Ice Co.* v. *Insurance Co.*, 23 *N. Y.* 357. *Jones* v. *Butler*, 20 *How. Pr.* 189.) The distinction between legal and equitable actions is abolished by the Code. (§ 69.) If the facts stated in the complaint, or established upon the trial, entitle us to any relief, either legal or equitable, we are entitled to recover according to the case made. (*Emery* v. *Pease*, 20 *N. Y.* 64, 65. *Barlow* v. *Scott*, 24 *id.* 42.) The complaint may embrace both legal and equitable causes of action; and if the plaintiff fails to establish an action in equity, he may still recover upon any legal cause of action set out in the complaint and established on the

Graves *v.* Spier.

trial. (*Davis* v. *Morris*, 36 *N. Y.* 569. *Hall* v. *Hall*, 30 *How. Pr.* 57. *Phillips* v. *Gorham*, 17 *N. Y.* 270. *Greason* v. *Keteltas, Id.* 491. *Catlin* v. *Gunter*, 11 *id.* 368.) Besides, by failing to demur or move to strike out and make definite, the defendant waived the objection. (*Code, subd.* 5, § 144. *Youngs* v. *Seely,* 12 *How. Pr.* 395. 2 *Kern.* 336. 10 *N. Y.* 59. 23 *id.* 357. 20 *How. Pr.* 189.) The defendant consented to a reference of this action. This was a clear waiver of the right to trial by jury, claimed in the counsel's points, but not raised on the trial. The recent case of *Bradley* v. *Aldrich*, (40 *N. Y.* 504,) we submit is not in conflict with the above authorities on the question of the pleading. That case was commenced and tried as an action in equity, seeking equitable relief only. No damages were alleged or claimed upon the trial. A reference was ordered, to assess damages not asked for, and judgment ordered thereon. Judge Woodruff, in his opinion, page 509, says: "It does not appear that the plaintiff at any time treated the action as brought to recover damages. No such idea could be suggested by the complaint. No such claim appears to have been made on the trial." At page 511, the learned judge concedes that legal and equitable actions may be united in the same complaint, and that by consent to refer the defendant waived a trial by jury.

VI. Numerous exceptions were taken by the defendant to the decision of the referee. Those embracing the principal questions raised on the trial have heretofore been adverted to. We will only refer, cursorily, to some remaining unconsidered, and seemingly unimportant. 1. It was no error in the referee not finding that the search was in the same condition when shown to the plaintiff's assignor, as when made by the clerk of Rensselaer county. A referee cannot be required to find any further findings of fact than such as enter into and form a basis of the judgment. Facts not found are necessarily negatived by

implication. (*Sermont* v. *Baetjer*, 49 *Barb.* 362. *Nelson* v. *Ingersoll*, 27 *How. Pr.* 1.) There is no proof to warrant such a finding. No evidence was adduced that the search was made and executed by the clerk. Safford testified that, he did not know whether the signature to it was genuine. The proofs fully establish it to have been false and untrue, as the referee has found. And the defendant has not excepted to the finding. The search was last in the possession of Spier. Efforts have been made to find it. They were unavailable. 2. Mrs. Graves relied upon the search, and it is apparent that she based such reliance upon Spier's representation that it was a true search. She confided and trusted in his statements made about the search, personally, and also through her agent, and had no other means of information of the genuineness of the search. Spier represented the search to be true. He, by those representations, induced Mr. Graves to believe it to be true, who communicated that belief to Mrs. Graves, and Safford conveyed the same representations of Spier to her. She relied upon a false search which Spier represented to her as a true one. Her husband and agent relied on Spier's representations. 3. It is entirely immaterial whether the bond accompanying the Walker mortgage was worthless at the time of the exchange, inasmuch as the representations made were respecting the mortgage. Nothing was said during the negotiations, about the bond. It was at no time asserted or claimed that Walker was solvent, or able to pay his bond. Besides, Graves swore the bond was then entirely worthless, and this testimony is not controvered. It is also admitted that judgment was obtained against him, execution issued, and returned wholly unsatisfied. 4. The defendant's exception respecting the Van Hoesen judgment is not well taken; because, (*a.*) The ground of the exception is that the referee found as a fact, that the Walker judgment was a prior lien to the Walker mortgage. This is not true in point of fact,

Graves *v.* Spier.

and the exception fails. (*b.*) The referee has not found that the judgment was a prior lien, but that it was a lien upon the premises, which was true in point of fact. (*c.*) The representations were that the Walker mortgage was the only lien upon the premises. (*d.*) This judgment is only material upon the question of damages, and it has already been shown that the defendant has not been injured by the rule adopted by the referee. This lien may have injured the plaintiff, and in a case of fraud it does not lie in the mouth of the wrongdoer to speculate on niceties. This exception is technical.

JOHNSON, J. The appellant's counsel claims that the complaint in this action is for equitable relief only—to have the contract between the defendant and the plaintiff's assignor rescinded on account of the alleged fraud, and the property assigned and conveyed in pursuance of such fraudulent contract, restored, and the parties placed in *statu quo.* · But I am of the opinion that the action was properly treated by the referee, and tried, as an action at law, to recover damages for an alleged fraud. The facts stated in the complaint constitute such a cause of action, and the prayer for relief demands a judgment for damages in a specified amount. It is true that after the prayer for judgment for the amount of the bond and mortgage received from the defendant, there is also a prayer for relief in the alternative, " or that the defendant be adjudged to reconvey the premises," and to account for the use, income and profits since the conveyance, or for other relief. But the prayer for relief is no part of the cause of action, and does not determine the character of the action. The nature of the action, and the cause of action, are shown by the facts stated. It is shown, by the facts stated, that the plaintiff could not have the alternative relief demanded, for it is there alleged that the defendant, long before the commencement of the action, had conveyed

the premises, and that her grantee had divided them and conveyed them, in different parcels, to sundry other persons. And this is admitted by the answer. No cause of action, therefore, which could entitle the plaintiff to that relief, is stated in the complaint, and it must be held to be an action at law to recover the damages sustained by reason of the fraud in making the contract. There are many statements in the complaint which are wholly unnecessary to such a cause of action, but they must be regarded as mere surplusage, which works no injury after issue is taken upon the complaint, and the parties go to trial. They must try the issues made by their pleadings, if they are material.

The most important question in the case, as it strikes me, is, whether such a cause of action is assignable, so that an assignee can maintain an action upon it. As the decisions in this State stand, it may, perhaps, be regarded as somewhat doubtful. In *Zabriskie* v. *Smith*, (13 *N. Y.* 322,) it was held, expressly, that a right of action caused by a false and fraudulent representation of the solvency of a vendee of merchandise was not assignable. Such a right of action, it was there held, would not survive to the personal representatives of the party defrauded, and therefore could not be assigned *inter vivos.* It was conceded, however, that any right of action which would survive to the personal representatives of the party defrauded, might be assigned by such party, and an action maintained thereon by the assignee.

In that case, as is seen, the fraud did not relate to any distinct and specific property, and no property was directly affected by it. It related to the credit and trustworthiness of a third person. There was, it is true, resulting damage to the plaintiff, but this was not the immediate or necessary consequence of the fraud; it was rather secondary and incidental. And the decision seems to have been placed expressly upon the ground that it

Graves *v.* Spier.

belonged to that class of injuries which consisted entirely of the personal suffering, either bodily, or mental, of the party defrauded, and which did not affect his property, and therefore the cause of action would die with him, and could not pass by assignment. In *Haight* v. *Hayt,* (19 *N. Y.* 464,) which was an action brought by the purchaser of a farm, against executors of the vendor, for a fraud practiced in the sale thereof, by their testator, in making false and fraudulent representations at the sale, in regard to an incumbrance thereon, it was held distinctly that such a cause of action survived against the personal representatives of the party practicing the fraud. Denio, J., who delivered the opinion in *Zabriskie* v. *Smith,* (*supra,*) in his opinion in the case then under consideration, says : " The action survived against the representatives of Hayt, the original defendant. The cause of action was a ' wrong done,' ' to the rights and interests' of the plaintiff." And he cites 2 *R. S.* 447, §§ 1, 2, and then says : "The exception in section 2 shows, if there was otherwise any doubt, that the prior section was intended to embrace this case." This is an express authority for the proposition that a cause of action for a fraud like the one in question, survives to, and against, personal representatives of a deceased party to the transaction, and is therefore assignable. Indeed, the statute would seem to place the question of the continuance of such a cause of action beyond all doubt. By section 1, the right of action is expressly given to, and against, executors and administrators "for wrongs done to the property, rights and interests of another, for which an action might be maintained against the wrongdoer." The action here does not fall within the exception made by section 2 of the statute.

In *Byxbie* v. *Wood,* (24 *N. Y.* 607,) which was an action brought by an assignee, to recover back moneys fraudulently obtained from the assignor by the defendant, by

fraudulent representations to such assignor, in respect to the cost of a certain vessel, the case of *Zabriskie* v. *Smith* is commented upon, and the distinction between that case and the one then before the court pointed out, and the judge who delivers the opinion goes further, and says: "It may be advisable to see how fully" the decisions in the cases of *Zabriskie* v. *Smith,* (*supra,*) and *Allen* v. *Addington,* (7 *Wend.* 9,) "accord with the Revised Statutes." The learned judge also expresses the opinion that if the tort was one of the elements that went to make up the cause of action, in the case then before the court, it was assignable. But the court did not pass upon that question, holding that the action was maintainable as for money had and received. It has long been held that a right of action for the conversion of personal chattels might be assigned, so as to enable the assignee to maintain the action. (*McKee* v. *Judd,* 12 *N. Y.* 622. *Gillet* v. *Fairchild,* 4 *Denio,* 80. *Hudson* v. *Plets,* 11 *Paige,* 180.) It is quite difficult to see why a cause of action growing out of a fraud, practiced by one upon another in the exchange or sale of property, by which the defrauded party loses his property, and which is a species of tort, is not also assignable. All the cases agree that it is assignable if the cause of action survives, and may be maintained by or against the personal representative of the parties to the transaction. We have seen that a cause of action like the one before us does so survive. This case is not like that of *Zabriskie* v. *Smith* in its facts, but is like that of *Haight* v. *Hayt.* I conclude, therefore, that the action is maintainable by the plaintiff as assignee.

There can be no question, at this day, that the defendant is liable for the fraud of her husband, who made the bargain for her as her agent, although she was wholly ignorant of the fraud so practiced, and did not authorize it. She had the fruits of the bargain. She kept the property bargained for, and sold it, and retains the proceeds.

Graves *v.* Spier.

She must be held, therefore, to have made the instrumentalities by which the property was procured her own. The law will impute the wrong to her under such circumstances, as it was done for her benefit, and she retains the advantage. (*Bennett* v. *Judson,* 21 *N. Y.* 238. *Elwell* v. *Chamberlin,* 31 *id.* 611. *Smith* v. *Tracy,* 36 *id.* 79.)

The referee finds that the defendant's husband and agent, at the time he made the representations, knew them to be false. That they were material is quite apparent, and it is proved, and found, that the plaintiff's assignor relied upon the representations. Indeed it could, in the nature of things, scarcely be otherwise, in such a case.

The appellant's counsel contends that the finding of the referee is against the evidence, but the most careful examination of the case will show that the finding is entirely justified by the evidence.

The appellant has no reason to complain of the rule adopted by the referee in measuring the damages. What the plaintiff was entitled to, was the difference between the value of the mortgage debt as it would have been had the mortgaged premises been free from all prior incumbrances, as represented, and its value as it turned out to be, with the mortgaged premises incumbered by two prior mortgages and a judgment, amounting in all to $4760.72, on the day the bargain was made. The two prior mortgages were foreclosed by action, and the premises sold in satisfaction thereof within less than two years after the bargain between the defendant and the plaintiff's assignor was made. On that sale the premises were struck off to the plaintiff's assignor, who was the highest bidder, for $6000. This, it will be seen, after satisfying the mortgage debts and costs, left a small amount to apply on the bond and mortgage of the plaintiff's assignor. The plaintiff testifies that this amount was about $1100. The referee finds

Graves *v.* Spier.

that had the premises been unincumbered by any previous incumbrances, as represented, the bond and mortgage would have been worth the full face thereof, $8852.03. After this foreclosure and sale of the mortgaged premises, the plaintiff's assignor brought an action on the bond which accompanied the mortgage, against the obligor, and obtained judgment; but the execution on the judgment was returned wholly unsatisfied. I do not see why the plaintiff, under such circumstances, was not entitled to recover the whole amount of the mortgage debt, over and above the surplus arising upon the sale, with interest on that balance, by way of damages. The plaintiff's assignor realized nothing upon, or by reason of, her mortgage debt, except this surplus. She bought the premises, it is true, at the foreclosure sale, but she took them as any other purchaser would, not because of her mortgage, or by means of it, but by a higher and hostile right. By means of her mortgage she got this surplus, and nothing more; and this was in effect a judicial determination that her mortgage, as an incumbrance, was worth no more. But the referee adopted a rule vastly more favorable to the defendant, giving her, as it would seem, the benefit of the purchase of the plaintiff's assignor, and charging her only with the amount which the defrauded party had to pay to get a title from another, and a hostile source. Certainly the defendant ought not to complain of the amount of damages. The assignment of the cause of action was properly admitted in evidence, and the appellant's counsel makes no point upon it.

The other assignments introduced in evidence were not void because the stamps thereon were not canceled. There is no evidence or room for pretense that they were left uncanceled for the purpose of defrauding the government. No question can arise here in regard to the mode in which the action was tried. The reference was by consent, and

it was tried without objection that it was not a referable action.

The judgment must therefore be affirmed.

MULLIN, P. J., concurred.

TALCOTT, J., also concurred, except as to the rule of damages suggested in the above opinion. In regard to that, his opinion was, that damages should have been estimated upon the basis of the redemption of the mortgaged premises, by the plaintiff's assignor, from the incumbrance of the prior mortgages, and the plaintiff allowed, by way of damages, what was necessarily paid by his assignor, to remove prior incumbrances, and make her mortgage the first lien, as it was represented, and interest thereon.

Judgment affirmed.

[FOURTH DEPARTMENT GENERAL TERM, at Syracuse, November 14, 1870. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]