# ZABRISKIE and others *against* SMITH.

A party is liable in an action for damages who, in bad faith and with a view of inducing others to credit a merchant, represents that he has examined into his affairs and considers him solvent and worthy of credit, and that he is going on well, when such merchant is, in fact, insolvent, and the party making the representations has not investigated his affairs, and knows nothing of his business condition, except that he is largely indebted.

In an action for falsely and fraudulently representing a person as solvent, the complaint should aver and the plaintiff must prove that the representations were made with intent to deceive and defraud. But a complaint which substantially, although not in direct and technical language, alleges this, is sufficient.

A variance in some particulars between the fraudulent representations alleged and those proved, is not material, unless the defendant prove to the judge at the trial that he was misled thereby to his prejudice.

The responsibility of a party for false and fraudulent representations is not necessarily limited to the credit obtained thereby, at or immediately subsequent to the time they were made. And where the representations were made in April, and the plaintiffs then, and at various times afterwards until November, sold the party recommended merchandise on credit; *Held,* That it was for the jury to decide whether the credits given during the summer and fall were induced by the representations.

A right of action for damages caused by a false and fraudulent representation of the solvency of the vendee of merchandise is not assignable.

Such a right of action would not survive to the personal representatives of the party defrauded.

It seems that a cause of action which would survive to personal representatives can be transferred and enforced in the name of an assignee.

An action founded on an express or implied promise to a person, does not survive to his personal representatives when the damages consist entirely in the mental or bodily sufferings of the deceased.

In actions sounding in tort, where it appears by the complaint that all the proper parties are not made plaintiffs, the defendant should take advantage of the defect by demurrer. If he omit to do so the defect is waived, although the defendant in his answer insists that the complaint should be dismissed for this defect.

And where in an action for a tortious injury to personal estate owned by joint tenants, one of the joint owners is not a party plaintiff, and the defendant omits to avail himself of the non-joinder in pleading, he will not be allowed on the trial to prove the interest of the owner not joined, in diminution of the amount to be recovered.

A judge is bound to instruct the jury on each proposition of law submitted to him by counsel bearing on the evidence.

Zabriskie *against* Smith.

But where very numerous distinct propositions are submitted, and the judge in his instructions to the jury covers generally all the questions presented, his attention should be particularly called to any question upon which more definite instructions are desired.

APPEAL from a judgment of the superior court of the city of New-York. The action was commenced in November, 1852. The plaintiffs, Zabriskie, Buckley and Hunter, in their complaint, stated that in the year 1848 they and one Gray were copartners as dry goods jobbers, in the city of New-York, under the firm name of John A. C. Gray & Co., and that as such copartners, they in that year sold to one Walter H. Smith goods to the amount of $3350.20, at different times, as follows: April 25th, to the amount of $831.76; April 28th, $23.96; May 22d, $89.10; July 3d. $45.93; August 6th, $165.47; September 2d, $92.58; November 9th, $439.51; 10th, $1567.87; and 11th, $44.02; that the defendant wrongfully and deceitfully encouraged and persuaded the firm to sell and deliver the goods to said W. H. Smith, on credit; that in order to induce them to do so, the defendant, in April, 1848, sent a message to the firm by one Sayre, to the effect that he, the defendant, had examined into the affairs of Walter H. Smith, and that he thought that what the firm should sell to said Walter would be all right, and if anything did happen, they would be taken care of; that he, the defendant, had talked with W. H. S., and was satisfied that he was solvent and that he was going on well; that the message was delivered by Sayre before the sale of any of the goods; and the firm, relying on its truth and honesty, in consequence thereof were induced and wrongfully persuaded to sell and deliver the goods to W. H. Smith, on credit; whereas the plaintiffs allege that the message was false and deceitful, and that the defendant had not examined the affairs of Smith, and was not satisfied that he was going on well or was solvent; but Smith was then and has been ever since insolvent, and the defendant was

unacquainted with his affairs, except to know that he was largely in debt; and the defendant himself then had a claim on him for $2500, and was, besides, his endorser for $1500 on a note held by a bank; and W. S. Smith had informed the defendant that he could go on in business if and на condition that the defendant would have the note renewed and continued at the bank; which fact, at the time the defendant sent the message aforesaid, he fraudulently and wrongfully suppressed and withheld from the said firm; therefore the plaintiffs say that the defendant falsely represented the credit of Smith. They further allege that they would not have trusted Smith with the goods, except in consequence of the message; that the defendant knew that the message would induce the firm to sell Smith the goods on credit, when he was not a person safely to be trusted. They further allege that in January, 1849, Smith failed, and made an assignment to a son of the defendant, in which he preferred the defendant for the above mentioned $4000, which was paid by the assignees out of the property thus assigned, a portion of which was the goods which the firm had sold Smith; that the firm, by means of said message and the wrong conduct of the defendant, have been deceived and defrauded to the amount of the goods sold, except as to $500 which had been paid on account. They further set forth that Gray retired from the firm prior to the commencement of the suit, and had assigned to Zabriskie, a copartner and one of the plaintiffs, all his right, share and interest in the goods so sold, and all claims and right of action against the defendant in respect to the premises.

The answer admitted sending a message to the firm by Sayre, somewhat different in its terms from the one set out in the complaint, and admitted some of the other facts stated and denied others, and denied all fraud. It admitted that Gray had retired from the firm before the commencement of the action, but denied that he had assigned to Zabriskie his interest in the goods sold Smith or the claim in suit. It

3 KERN.—21

insisted that Gray was, at the time of the commencement of the action, a part owner of the demand sued on, and should have been made a party, and prays that the complaint should be dismissed on account of his not being joined.

The cause was tried in New-York, in June. 1853, before Mr. Justice Bosworth. It appeared that the defendant, who had been a merchant and formerly a customer of Gray & Co., lived at Port Byron, in Cayuga county; that Walter H. Smith, who was his brother, lived and carried on business as a merchant, at Jordan, about nine miles from Port Byron, and that Sayre, who was brother-in-law of the defendant, lived at Victory, about 12 miles from Walter H. Smith's. The sending by the defendant of the message, which was verbal, by Sayre, who went to New-York about the same time when W. H. Smith went there, in April, 1848, was proved by the statement of the defendant as a witness on the trial of another cause, which testimony was given in evidence on this trial, and by Sayre. According to the defendant's former testimony, Sayre called at the defendant's house, on his way to New-York, and he, defendant, said to him that he wished he would call upon Gray & Co., and say that he, the defendant, had examined into Walter H. Smith's affairs, and thought that what they, Gray & Co., sold him would be all right, and if anything did happen to him, W. H. Smith, they, Gray & Co., would be taken care of. The defendant, in his testimony also said, that he told Sayre, in the same conversation, that he had talked with Walter and was satisfied that he was going on well. This the defendant, in his testimony aforesaid, said was all he recollected as to any message sent to Gray & Co. Sayre was a witness for the plaintiffs, and testified that he delivered the message to Mr. Gray, of the firm of Gray & Co., in New-York, as follows: that the defendant asked him, the witness, to say to Gray & Co., that if Walter H. Smith bought any goods of them, he, the defendant, thought it

would be all right; that he the defendant, had been down
to Jordan and inquired into Walter H. Smith's affairs, and
thought all was right, and if anything happened, they, Gray
& Co., would be taken care of.   The plaintiffs then proved
the sale of the goods, to the amounts and at the times men-
tioned in the complaint, the first of which sales was made
immediately after the delivery by Sayre of the defendant's
message.   The defendant's counsel objected to proof of the
several items of sales made after April, 1848, insisting that
they could not have been influenced by the alleged repre-
sentation, but the judge overruled the objection, holding
that it was a question for the jury how far they were affected
by the representation.   The defendant's counsel excepted.

It appeared that Walter H. Smith, at the time the mes-
sage was sent, owed the defendant $2500, and that he had
also a note running to maturity at a bank for $1500, on
which the defendant was his endorser.   It was shown, by
giving in evidence the defendant's testimony as aforesaid,
that the defendant had not examined Walter's account books,
except to look into his cash book once, and that he had no
knowledge as to the amount of his indebtedness, except as
to the debt to himself and the bank ; that Walter had told
the defendant, just before the latter gave the message to
Sayre, that he could go on in his business without any
trouble, provided he, the defendant, would keep the bank
note renewed.   The failure of Walter H. Smith, in January,
1849, and his assignment and the payment of the preferred
debts out of the assigned property, as set out in the com-
plaint, were admitted, except as to the allegation that a por-
tion of the property purchased of the plaintiffs was among
the assigned goods, which was not admitted or proved.
The plaintiffs gave in evidence an assignment by John A.
C. Gray to Zabriskie, executed before the commencement
of the action, of all his interest in the goods sold by the
firm to Walter, and of all demands or causes of action
against the defendant relating thereto, growing out of an

alleged misrepresentation of Walter's credit. An objection was taken to this evidence, on the ground that the cause of action was not assignable, but it was overruled, and the defendant excepted. The plaintiffs offered to prove that the defendant, at the same time he sent the message to the plaintiffs, sent a similar one to Mr. Schoolcraft, a merchant in Albany. The evidence was received against the defendant's objection, and he excepted. It was proved that Walter H. Smith bought goods of Schoolcraft subsequent to the message.

The defendant's counsel moved for a nonsuit on the grounds, as stated, that the complaint did not state a cause of action ; that the complaint was not proved ; and that no cause of action was shown by the testimony. The motion was denied, and the defendant's counsel excepted.

The defendant called Walter H. Smith, who gave testimony tending to show that he considered himself solvent in April, 1848, and had stated to the defendant, who came to Jordan to inquire into the witness' circumstances before the latter sent the message to the plaintiff's house, that he, the witness, thought there would be no difficulty in his getting along ; and also tending to show that prior to the purchase of the goods of the plaintiff, one of the firm was informed of his, W. H. Smith's, indebtedness to the defendant and to the bank, and of his circumstances generally. It appeared on his cross-examination, that he was entirely without property in the spring of 1847, and was then indebted about $150 ; that after that time he went into business with a person named Hoff, with whom he dissolved shortly before the purchases in question. The defendant also proved that one of the plaintiffs had said, after Walter's failure, that he sold the goods to Walter on his honor, that the plaintiffs knew all about him, and if the debt was lost they should not blame any one.

The testimony being closed, the defendant's counsel submitted to the judge thirty-nine written propositions, sepa-

rately numbered, which he desired to have laid down in the charge to be given to the jury. Several of these related to inferences of fact and matters of evidence, others to matters of law. Among the points of law embraced in them, was the position above referred to, that the sales made subsequent to April, 1848, could not be considered to have been influenced by the representation, and that the jury, if they found for the plaintiffs, ought to deduct the value of Gray's interest, he not being a party.

The judge charged the jury upon the whole case, embracing in his remarks many of the subjects to which the written propositions related, and stating the principles of law which applied to the action, and instructing them particularly that if they should find for the plaintiffs, the verdict should be for the value of all the goods which they should find the plaintiffs were induced to sell by reason of the representation. At the close of the charge, the defendant's counsel called the attention of the judge to the point before mentioned, that the interest of Gray should be deducted, because he was not a party plaintiff. The judge declined to charge as requested in that respect, stating that in his view the defect of parties was waived by the defendant's having omitted to demur. To this the defendant's counsel excepted. The defendant's counsel then requested the judge to charge the jury, in conformity with the written requests before mentioned, but he declined to do so, remarking that the charge given covered all the grounds presented by the evidence. The defendant's counsel again excepted. Verdict for the plaintiff for $3413.86. On an appeal to the general term, the judgment entered on the verdict was affirmed, whereupon the defendant brought this appeal.

*William Porter*, for the appellant.

*E. L. Fancher*, for the respondents.

DENIO, J. The questions of law arising upon this appeal appear to be the following : 1. Whether the complaint sets forth a cause of action ; 2. Whether the evidence on the part of the plaintiffs, standing uncontradicted, made out a case suitable to be submitted to the jury, or whether, on the contrary, they ought to have been nonsuited ; 3. Whether the sales of goods made by the plaintiffs to Walter H. Smith, subsequent to April, 1848, were so far out of the influence of the alleged false representation that the consideration of them should have been taken from the jury ; 4. Whether the interest of John A. C. Gray was assignable; if not, 5. Whether the action in the names of the other partners can be sustained, in consequence of the defendant having omitted to demur to the complaint; and lastly, if the last point is determined against the defendant, whether the value of the interest of Gray ought to have been deducted from the recovery.

(1.) The complaint imputes to the defendant the sending of the message with a view of inducing the plaintiffs to sell goods to Walter H. Smith ; and the message imports that the defendant had examined into Smith's affairs with sufficient attention to enable him to express the opinion that he might safely be trusted. This is somewhat qualified by the promise that in case of anything adverse happening they should be taken care of, a promise which, it is admitted, cannot be availed of in this action ; still, with this deduction from its force, it was a representation of considerable strength, that the defendant had ascertained that Smith was, in a business point of view, trustworthy. The second branch of the message, as set out, is equally strong ; that the defendant had talked with Smith, and was satisfied he was solvent and was going on well. Such a representation, from a person entitled to confidence, would be calculated to exercise more or less influence upon the mind of a dealer. Then the breach is that Smith was in fact insolvent, and the defendant had not made any such examina-

Zabriskie *against* Smith.

tion as he represented, and was unacquainted with Smith's affairs, except to know that he was indebted $4000. It is unnecessary to remark here upon the alleged fraudulent concealment, for I am of opinion that to represent, of a man entirely insolvent, that you have examined into his affairs, and consider him solvent and worthy of credit, and that he is going on well, when all you know of his business condition is, that he owes a large sum of money, is actionable, if the representation was made from bad motives, in order to induce a credit.

In *Allen* v. *Addington* (11 *Wend.*, 374, 386), the court for the correction of errors decided that in an action of this kind the plaintiff must aver that the false representation was made with an intention to deceive and defraud him. Under our present system of pleading, I conceive that a complaint should contain the substance of a declaration under the former system. It is sufficient, however, that the requisite allegation can be fairly gathered from all the averments in the complaint, though the statement of them may be argumentative, and the complaint deficient in technical language. In this complaint the message is characterized as false and deceitful, and it is averred that by means of it the plaintiffs have been deceived and defrauded, and that the defendant wrongfully and deceitfully encouraged and persuaded the plaintiffs to sell the goods. And it is further alleged that the defendant, when he sent the message, well knew that the plaintiffs would rely upon its truth, and that it would induce them to sell and deliver the goods to W. H. Smith, upon credit, when he was not a person to be safely trusted. This language, taken together, I think, by a reasonable intendment, makes out the allegation of bad faith and evil intention on the part of the defendant, though a concise averment in the terms mentioned in the books would have been better pleading, and more in accordance with the spirit of the Code.

(2.) The sending of the message and its delivery by Sayre were proved, and though it varied slightly from the statement in the complaint, the defendant did not avail himself of the variance in the manner pointed out by the Code. (*Catlin* v. *Gunter*, 1 *Kern.*, 368.) Its terms and the circumstances under which it was sent showed clearly that the intention was to induce the plaintiffs to give credit to Smith. The defendant could have had no other motive in sending it. Now, although it was not a very strong recommendation of the responsibility of Smith, it tended to convey the opinion that he was a safe person to be trusted with a quantity of goods, and that the defendant had ascertained such to be the fact from conversation with him and an examination of his affairs. The most important circumstance respecting the solvency of a business man, is the amount of the debts which he owes. The plaintiffs proved, by the defendant's own sworn declaration, that he had no knowledge whatever of the amount of Smith's debts. It appeared, moreover, that Smith was at that time indebted to the defendant in a sum which, considered in reference to the extent of his business, was large. This, of course, the defendant knew, for the debt was in part owing to him, and as to the rest he was surety for its payment. Good faith required that the existence of these debts should have been communicated to the plaintiffs. It was an important qualification of the information actually conveyed by the message, and should have formed a part of it. Had the plaintiffs been informed that Smith was going on at the sufferance of the defendant, who could at any time shut up his store, it is improbable that they would have trusted him. The defendant volunteered to inform the plaintiffs as to Smith's business condition, with a view to procure credit for him, and it was disingenuous to withhold this material circumstance. I think the case was a fit one to be passed upon by the jury, and that the nonsuit was properly denied.

Zabriskie *against* Smith.

(3.) I think, too, it was a question for the jury whether the sales made to Smith in the summer and autumn of 1848 could have been influenced by the recommendation made in April of that year. It is quite a different question from that presented in the cases referred to by the defendant's counsel upon guaranties. (*Rogers* v. *Warner*, 8 *Johns.*, 119; *Whitney* v. *Groot*, 24 *Wend.*, 82.) These cases turned upon the construction of the language of a contract, and the question was whether it contemplated a single transaction or a series of transactions. In the case under consideration, the defendant is charged with infusing into the minds of the plaintiffs false views as to Smith's business condition and circumstances ; and the question is whether, considering the defendant to be culpable, the wrong impressions thus inculcated would have been likely to operate for a period of between six and seven months. It would be manifestly unreasonable to limit the defendant's liability strictly to the very time of making the recommendation, for it would have been as likely to operate upon the plaintiffs' minds at any time during the same season, and within a few weeks or months, as at the time when it was given. Whether, according to the common usage of men of business, a fresh inquiry would be likely to be made at a time not more remote than that of the last purchases in this case, presented a question for the exercise of the good sense of the jury, and I think the court was right in leaving it to them. If they had determined that the late purchases were too remote to be affected by the representation, we should have been satisfied with the finding. In short, this was not a question of law but of fact.

(4.) If the interest of Mr. Gray in the cause of action was not of a nature to be transferable by assignment, the written transfer given in evidence was inoperative, and he was a necessary party to the action. We decided at the last term, in the case of *McKee* v. *Judd* (2 *Kernan*, 622), that a right of action for the conversion of personal chattels might be assigned, so as to vest a property in the assignee, and

enable him, under the provisions of the Code, to maintain the action. This was in accordance with *Gillett* v. *Fairchild* (4 Denio, 80), and *Hudson* v. *Plets* (11 *Paige*, 180), and I have no doubt of its correctness. But this is a different case, and depends, as we shall see, upon different principles. The maxim of the common law is, *actio personalis moritur cum persona*. This principle was not originally applied to causes of action arising out of the breach of a contract. These were parcel of the personal estate in respect to which the executor or administrator represents the person of the deceased, and is in law his assignee. (*Raymond* v. *Fitch*, 2 *Crompt., Mees. & R.*, 588, 597; 1 *Williams on Ex'rs.*, 677; *Broom's Legal Maxims*, 702.) But as to this class of rights of action, late cases have somewhat qualified the rule, and it is now well settled that an executor or administrator cannot maintain an action upon an express or implied promise to the deceased, where the damage consists entirely of the personal suffering of the deceased, whether mental or corporeal. Actions for the breach of a promise of marriage, for unskilfulness of medical practitioners contrary to their implied undertaking, the imprisonment of a party on account of the neglect of his attorney to perform his professional engagement, fall under this head, being considered virtually actions for injuries to the person. (*Chamberlain* v. *Williamson*, 2 *Maule & Selw.*, 408.) But all actions arising *ex delicto*, were governed by this maxim, until the statute 3 Ed. III., ch. 7, changed the rule respecting actions of trespass *de bonis asportatis*, authorizing such suits to be maintained by executors where the taking was in the lifetime of their testator. Another act, passed in the fifteenth year of the same reign (*ch.* 5), gave the like actions to administrators. These statutes have been greatly extended by an equitable construction, as will be seen by the cases collected in *Williams' Treatise on Executors* (*vol.* 1, *p.* 670); but I do not find that an action on the case for a deceit has ever been considered as within the purview of the statutes

Zabriskie *against* Smith.

It was not until a late period that executors or adminis-
trators were enabled to maintain an action for injuries to
the real estate of the deceased.   Such remedies were given
by the statute 3 *and* 4 *William IV.*, *ch.* 42. (*Broom's Leg.
Max.*, 405.)   The Revised Statutes of this state have pro-
ceeded on the assumption that by the common law, actions
for a tort could not be maintained by personal representa-
tives.   Hence we find it enacted that "executors and
administrators shall have actions of trespass against any
person who shall have wasted, destroyed, taken or carried
away, or converted to his own use the goods of their tes-
tator or intestate in his lifetime.   They may also maintain
actions for trespass committed on the real estate of the
deceased in his lifetime." (2 *R. S.*, 114, § 4.)   If it be
true that the executors or administrators are, as was said by
Lord Abinger in *Raymond* v. *Fitch*, the testator's assignees,
it is fair to assume that they take whatever of a personal
nature the deceased had which was capable of assignment,
and that the power to assign and to transmit to personal
representatives are convertible propositions.   Upon the
reason of the thing this should be so, for no good title
can be passed to an assignee of an interest which dies
with the person of the assignor.   This distinction has
been made the foundation of several judicial decisions.
Cowen, J., said, in *The People* v. *The Tioga C. P.*, "I
have never been able to find any case in England which, in
respect to personal estate, has given the assignee a greater
right than would go to an executor, none which vests in
him a right of action for a personal tort, or any other mere
tort." (19 *Wend.*, 76.)   In *Somner* v. *Wilt* (4 *Serg. &
Rawle*, 19, 28), the action was for a malicious abuse of legal
process against property.   The plaintiff before bringing the
action had made an assignment under an insolvent act of
all his *estate, credits and effects*.   It was objected that he had
parted with his right of action.   The court, however, held
that it was not the subject of an assignment under the insol-

vent act. They say that the cause of action was neither estate, credits or effects; that it was a personal action, that would die with the person. They add, " if it passed by the assignment his death would not affect it." The same doctrine was laid down in *North* v. *Turner* (9 *Serg. & R.*, 244). It was an action of trespass *de bonis*, and the question was whether an assignment by one of the plaintiffs *pendente lite*, accompanied by the payment of the defendant's costs, qualified him to be a witness—the courts in Pennsylvania allowing parties to the record, when not interested, to be witnesses. The court held that the assignment was effectual to divest him of interest; and they say that the rule, holding the right of action for personal injuries not to be assignable, " does not hold with respect to a trespass committed against the party's goods, the remedy for which survives to his personal representatives, by the statute 4 *Ed. Ill.*, *ch.* 7, which clearly shows that such a cause of action is separable from the person of the owner." And Story, J., in *Comegys* v. *Vasse* (1 *Pet.*, 213), remarked that it might in general be assumed " that mere personal torts, which die with the party and do not survive to his personal representatives, are not capable of passing by assignment."

These cases certainly furnish a respectable amount of judicial authority, and I think warrant us in holding, that any interest to which the personal representatives of a deceased party would not succeed, is not the subject of assignment *inter vivos*. The subject is one of great practical importance, since the Code of Procedure has authorized actions by assignees of a chose in action; and I am glad to find a rule laid down, of easy application, which will furnish a ready solution of many questions upon which the courts of original jurisdiction have differed in opinion. I may mention an additional case from the supreme court of Pennsylvania, upon the general question. *O'Donnell* v. *Seybert* (13 *Serg. & R.*, 54, 56) was an action for an excessive distress. It was held that the cause of action could not be assigned.

" It is not," say the court, " an action of contract *or of property.*" The amendment made, in 1851, to the 111th section of the Code seems to have been designed to correct an erroneous construction sometimes given to the section as originally enacted, by which all causes in action were held to be assignable; but I do not think the amendment bears upon the present question. . If I am right in what has been said, the instrument executed by Gray to Zabriskie did not pass any interest.

(5.) Although Gray, on the assumption that he had not parted with his interest, was a necessary party to the action, the defendant might, notwithstanding, consent to waive the objection and litigate the case upon the merits. Under the former system, the defendant could not in actions *ex delicto* object to the non-joinder of one who ought to have been made a party plaintiff, except by plea in abatement (1 *Saund.*, 251, 291, *note* (*g*) *and note* (*n*) ; *Gilbert* v. *Dickerson*, 7 *Wend.*, 451); and the Code of Procedure provides that where there is a defect of parties apparent upon the face of the complaint, the defendant may demur; and that where such an objection exists, but it does not appear by the complaint, it may be taken by answer (§ 144, *subd.* 4, *and* § 147); but if no such objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same. (§ 148.) A dilatory defence, which a plea in abatement is considered to be, is not favored; but he who is entitled to avail himself of it must interpose it promptly, according to the established forms. Here the facts were fully disclosed by the complaint, and the defendant could have demurred. The authority to object by way of answer is, in terms, limited to cases where the fact does not appear in the prior pleading. When, therefore, the last section which I have quoted declares that if the objection is not taken by demurrer or answer it shall be considered as waived, it means that if it be not taken by demurrer where that mode is proper, or by answer in cases where

that is the appropriate method, it is waived. This construction will give full effect to all the language, and will, besides, compel the defendant to take his ground with the promptness inculcated by the rule of pleading to which I have referred. I observe that it has been determined at a special term in the 5th district that matter in abatement must be pleaded separately, prior to the putting in a plea in bar. (*Gardiner* v. *Clark*, 6 *How. Pr. R.*, 449.) The reasoning of Mr. Justice W. F. Allen in that case commends itself to my judgment, and individually I should be ready to approve its correctness, but it is unnecessary for the court in this case to pass upon that question. The defendant must be held to have waived the objection to the non-joinder of Gray by omitting to demur.

(6.) The only remaining question then arises, whether the defendant was entitled to give in evidence the non-joinder in diminution of damages. It has been repeatedly decided that where one or more of several tenants in common sues, and the defendant neglects to avail himself of the objection by plea in abatement, he may still give it in evidence to reduce the damages. (*Dockwray* v. *Dickenson*, *Skinner*, 640; *Blackborough* v. *Graves*, 1 *Mod.*, 102; *Addison* v. *Overend*, 6 *Term R.*, 766; *Sedgworth* v. *Overend*, 7 *id.*, 273; *Wheelwright* v. *Depeyster*, 1 *Johns.*, 471; *Rich* v. *Penfield*, 1 *Wend.*, 380, 386; *Gilbert* v. *Dickinson*, 7 *Wend.*, 449.) These authorities are conclusive against the plaintiffs unless there is a distinction between tenants in common and joint tenants. The members of the firm were joint tenants, and not tenants in common. Partners are joint tenants of all the partnership effects during the existence of the copartnership, and even after dissolution until its affairs are wound up. (*West* v. *Skip*, 1 *Ves.*, *sen.*, 242; *Collier on Part.*, § 123; *Murray* v. *Mumford*, 6 *Cow.*, 441.) In the case of tenants in common, the rule allowing the interest of the party not joined to be proved in diminution of damages is put upon the ground that he may still sue for the value of his share;

Zabriskie *against* Smith.

as was done in *Sedgworth* v. *Overend,* above referred to. But joint tenants are not owners of separate shares. Each joint owner has title to the entirety. (*Co. Litt.,* 186 *a.*; 2 *Bl. Com.,* 182.) I am, therefore, of opinion that where the defendant permits one or more of several joint tenants to sue alone in an action of tort, by not pleading the joint tenancy in abatement, that the recovery should be for the damages sustained by all the joint tenants.

In the course of the trial the plaintiffs were permitted to prove, against the defendant's objection, that Sayre was charged by the defendant with a communication to School-craft, of the same tenor with the one which he was requested to make to the plaintiffs, and at the same time. I think this was admissible as a part of the transaction, and as tending to show the motive of the defendant.

The defendant also excepted, because the judge did not respond specifically to all the propositions stated in writing by the defendant's counsel. I do not think we ought to apply to the case of a series of propositions, in a request to charge, the rule applicable to an exception to a charge — that if any part of it is correct, the exception is unavailable for not specifying the parts intended to be objected to; and I concede that the judge ought to respond to each proposition, provided it presents a question of law bearing upon the evidence. But in this case, where the separate propositions were very numerous, and the charge covered generally the questions of law presented, the defendant's counsel, if he conceived that any one or more of them was not sufficiently answered, should again have called the judge's attention to it. This the counsel did in this case as to one point, and it was fully met by the additional charge. If there was any other proposition which the judge failed to answer, it should have been mentioned.

The result of these remarks is, that the judgment of the suprem₃ court should be affirmed.

Zabriskie *against* Smith.

GARDINER, C. J., JOHNSON, CRIPPEN and DEAN, JJ., concurred in the foregoing opinion.

HAND, J., delivered an opinion in favor of reversing the judgment of the supreme court. MARVIN, J., was also in favor of reversal.

Judgment affirmed.[1]

----

[1] In the case of Jackson *v.* Daggett, 24 Hun 205-6, Judge DYKMAN says, that this case " is not in harmony with the current of judicial authority. The question was examined on common-law principles and authorities, without any reference to our statutes on the subject, which are controlling. In the opinion, it is stated, the power to assign, and to transmit to personal representatives, are convertible terms ; and under our statute, for wrong done to the property, rights or interests of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after his death, by his executors or administrators, in the same manner and with the like effect in all respects as in actions founded on contract. (3 R. S., 7th ed., 2394, ¾ 1.) The next section takes out of the operation of this statute, actions for slander, libel, assault and battery, false imprisonment, and injuries to the person. Now, it is entirely plain, that the wrong complained of in Zabriskie *v.* Smith, was an injury to the rights and pecuniary interests of the plaintiff's assignor. This case was decided in 1855, and in 1859, there went to the Court of Appeals for determination, the case of Haight *v.* Hoyt, 19 N. Y. 464, an action against a vendor of land, for fraudulent representations as to incumbrances, which had been continued against the executor of the vendor, and the court there held, that the right of action survived against the personal representatives ; and the judge who prepared the opinion in Zabriskie *v.* Smith, wrote an opinion on this case, in which he said, the cause of action was a wrong done to the rights and interests of the plaintiff. This last decision was founded on our statute, while the other was not ; and the two cases are entirely inharmonious. Besides this, the case of Zabriskie *v.* Smith has been criticised in Johnston *v.* Bennett, 5 Abb. Pr. (N. S.) 331 ; Freed *v.* New York Central Railroad Co., 25 How. Pr. 285 ; and Wade *v.* Kalbfleisch, 58 N. Y. 280." And it was accordingly held, that a cause of action against a sheriff, for his failure to return an execution against property, within the time required by law, and for making a false return, was assignable ; and that the assignee might sue thereon in his own name. Jackson *v.* Daggett, *ut supra.*