WILLIAM S. MOORE, AS ASSIGNEE OF EDWARD D. SEELEY, RESPONDENT, *v.* ALEXANDER McKINSTRY, JR., APPELLANT.

*Cause of action arising from fraudulent representations — when it passes to the general assignee of the party injured thereby.*

In pursuance of negotiations had between one Seeley and Snow, the former sold to the latter a stock of goods, receiving therefor Snow's note for the purchase-price, indorsed by one Clark. Snow being unacquainted with Seeley, referred him to the defendant, who, knowing that Snow and Clark were insolvent and unfit to be trusted, and contriving and intending to fraudulently deceive and injure Seeley, falsely, fraudulently and deceitfully represented and affirmed to him that Snow and Clark were perfectly good and responsible. The goods were shipped to and delivered at a store in the possession of the defendant, and some of the proceeds of the sale thereof were received by him, under an agreement that he was to have one-fourth of the goods in question for recommending the notes to be good. Thereafter Seeley executed a general assignment for the benefit of creditors, in the usual form, to the plaintiff.

*Held,* that Seeley had a cause of action against the defendant to recover the damages sustained by reason of his fraudulent representations and acts, which cause of action passed to the plaintiff under the general assignment, and that an action could be brought thereon by the latter in his own name.

*Zabriskie* v. *Smith* (13 N. Y., 322), distinguished.

APPEAL from a judgment in the plaintiff's favor, entered upon a verdict rendered at the Ontario Circuit, for $2,829.35. The plaintiff is the general assignee of the goods and effects of Edward D. Seeley, in trust for the benefit of the creditors of the latter. The assignment was executed and delivered on the 19th day of August, 1880. The action is for fraud and deceit on the part of the defendant, in making false statements and representations as to the financial condition of Levi A. Snow and one Maggie Clark. Snow was at the time of the alleged false representations in negotiations with Seeley for the purchase of his stock of goods of the value of some $2,200, and proposed to give in payment therefor his own note, indorsed by the said Clark. The trade was consummated, the goods delivered and the notes of Snow, indorsed by Clark, were received in payment.

The complaint alleges that Seeley was unacquainted with the financial condition of Snow and Clark, and pending the negotiations Snow referred Seeley to the defendant for information respecting their financial condition, and that the defendant, knowing that Snow and Clark were in insolvent circumstances and unfit to be trusted, but contriving and intending to fraudulently deceive and injure Seeley, falsely, fraudulently and deceitfully represented and affirmed to him that Snow and Clark were perfectly good and responsible, and that he himself had discounted Clark's paper, and he considered her paper good, and if Seeley, in concluding a sale of the goods and merchandise, took in exchange the notes of the said Snow, indorsed by Clark, the defendant would discount them. The complaint contains the other customary allegations in such cases, stating that the representations were false and untrue to the knowlededge of the defendant.

The plaintiff's counsel, in stating the case to the jury, mentioned the facts he intended to prove, and, among other things, stated that Snow applied to Seeley to purchase his goods and to pay therefor the sum of $2,279, by his notes indorsed by Clark, and that Seeley

was unacquainted with the financial condition of said Snow and Clark and being referred by Snow to the defendant, applied to the defendant for information respecting Snow and Clark's financial condition; that the defendant, although he knew said parties were insolvent and unworthy of credit, with the intention of injuring and deceiving Seeley, represented and affirmed that both Snow and Clark were good and responsible for the amount named; and he proposed, also, to prove the other facts and circumstances stated in the complaint. Thereupon and before any evidence was presented the defendant moved for a nonsuit, upon the ground that the cause of action set forth in the complaint was not assignable, nor did the facts stated in the plaintiff's opening constitute a cause of action in the plaintiff's favor. The motion was denied, and the defendant excepted. The plaintiff then gave evidence tending to establish the facts as stated in his opening and alleged in his complaint, and gave in evidence the assignment, the granting clause of which is as follows: "The said Edward D. Seeley, the party of the first part, has sold and assigned  * * *  and does sell and assign  * * *  unto the party of the second part  * * *  all and singular the lands, goods, chattels, promissory notes, debts, claims and demands, property and effects of every description belonging to the said party of the first part."

The case also states that "the evidence tended to show that the goods were shipped from East Broomfield (Seeley's place of residence) to Syracuse (the residence of the defendant), and were delivered at a store, then in the possession of the defendant, and that the defendant had received some of the proceeds of the said goods; that the defendant was to have one-fourth of the goods in question for recommending the said promissory notes to be good." The plaintiff then rested, and the defendant renewed his motion for a nonsuit upon the same grounds as those before stated. The motion was denied, and the defendant again excepted. The bill of exceptions then states: "The defendant thereupon gave evidence tending to contradict the evidence of the plaintiff upon the question of deceit alleged to have been practiced upon him." None of the evidence or the charge of the court is set forth in the bill of exceptions. The answer was a general denial. This action was commenced in November, 1880.

*Louis Marshall*, for the appellant.

*Henry M. Field*, for the respondent.

BARKER, J.:

The legal propositions presented on this appeal arise on the facts set forth in a bill of exceptions. The only question argued, and it is the only one we have considered, is, was the cause of action which accrued in Seeley's favor, by reason of the fraud and deceit practiced by the defendant, assignable under the laws of this State at the time the general assignment was delivered to the plaintiff. By the common law, causes of action classed as *ex delicto* did not survive the death of the person injured, nor that of the wrong-doer; neither were they assignable. One of the reasons upon which this rule, that they were not assignable was based, was, that the title to a cause of action could not vest in a person who could not prosecute the same after the death of the party who suffered the injury. The injustice of the rule was manifest as to a class of actions founded in tort, and was long ago recognized in England, and its rigidity relaxed in a large number of cases by parliamentary enactments, authorizing suits to be maintained by executors and administrators for causes of action existing in the lifetime of the deceased. (Broome's Legal Maxims, m. p. 704; Williams on Executors, 668.) The English courts gave to these statutes a wide construction, and in all cases where the cause of action survived by virtue of these statutes, the injured party might transfer the same in his lifetime and vest in the assignee a complete title with the same effect as a transfer of a chose in action founded on contract.

The Revised Statutes have proceeded upon the assumption that this rule of the common law was in force in this State, and without legislative sanction actions for a tort could not be maintained against the tort-feasor by the personal representatives of the deceased party.

We find several statutes relative to this subject, and one enactment is: "Executors and administrators shall have actions of trespass against any person who shall have wasted, destroyed, taken or carried away, or converted to his own use the goods of their testator or intestate in his lifetime. They may also maintain actions for trespass committed on the real estate of the deceased in his lifetime."

(2 R. S., 114, § 4.) Other provisions relative to the same subject are found in chapter 8, part 3, title 3, article 1, entitled "of suits by and against executors and administrators." (2 R. S., 447, *et seq.*) In section 1 it is enacted : "For wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or, after his death, by his executors or administrators against such wrong-doer, and after his death against his executors or administrators in the same manner and with the like effect in all respects as actions founded on contracts." The limits placed upon this section are distinctly defined in the next section, which is as follows : "But the preceding section shall not extend to actions for slander, for libel, or to actions of assault and battery or false imprisonment ; nor to actions on the case for injuries to the person of the plaintiff or to the person of the testator or intestate of any executor or administrator." These provisions of the statute are in full force and effect. (*Cregin* v. *Brooklyn Crosstown R. Co.*, 75 N. Y., 192 ; *Murphy* v. *N. Y. C. and H. R. R. R. Co.*, 31 Hun, 358 ; *Kelsey* v. *Jewett*, 34 Hun, 11.)

Prior to the enactment of chapter 15 of the Code of Civil Procedure, which went into operation September 1, 1880, there was no direct and affimative provision in any of our statutes permitting the assignment of causes of action based on a tort, in the lifetime of the injured person, so as to vest in the assignee a title thereto. But the courts have given to the several statutes above quoted a broad and equitable construction, and since their enactment it has been uniformly held that, in all cases where, by force of any statute, the right of action survived to the personal representatives of the injured party or against those of the wrong-doer, the same was the subject of an assignment *inter vivos.* No further reference to the law on this subject, as it existed prior to the adoption of the first Code (1848 and 1849), is necessary in considering the question now presented. By sections 111 and 112 of that enactment it was provided that "every action must be prosecuted in the name of the real party in interest. * * * But this section shall not be deemed to authorize the assignment of any right of action not arising out of contract."

I am unable to find any adjudication which holds that these provisions had the effect to enlarge the class of cases in which an

assignment might be made vesting the right of action in the assignee. But for the purpose of determining the cases which frequently came before the court involving the question, in whose name the action should be prosecuted under such requirement, it became necessary to consider whether the cause of action was transferable for the purpose of disposing of the question thus presented. One of the earliest cases on the subject, after the adoption of the Code, was *Zabriskie* v. *Smith* (13 N. Y., 322), and it was there held that an interest or claim to which the personal representatives of a deceased party would not succeed, was not the subject of an assignment by the injured party. In that case it was held that a cause of action arising from the fraud and deceit of the defendant in misrepresenting the financial condition of a third person, was not assignable, and the same was regarded as an injury purely personal, and could not be treated as an injury done to the personal estate of the deceived and injured party. This case has been frequently cited in subsequent adjudications and much commented upon and sometimes criticised and doubted, yet the rule, as there laid down, has never been overruled in any case where the facts were no different from those there presented.

The learned counsel for the appellant stands upon the rule of law as stated in that case and other similar adjudications, and insists that the case at bar presents precisely the same legal propositions. If the facts in the case before us are not essentially different, then it must be admitted that *Zabriskie* v. *Smith* is an authority which supports the argument, and the judgment should be reversed. In that case the defendant's false statements and misrepresentations were made directly to the merchants who were about to make a sale of goods to a customer who applied for a credit, and in consequence of the defendant's false representations they were induced to make the sale and the purchaser being at that time insolvent, they suffered a loss. Smith, the defendant, did not share in any way in the goods purchased, nor derive any profit or advantage from the transaction. It was a case of fraud and deceit practiced upon the vendor of goods, who was induced thereby to part with his goods to another. In the case now before us, the facts are essentially and materially different, and brings it within the class of cases where the cause of action survives the death of the injured party as well

as the wrong-doer, by the provisions of the Revised Statutes, as has been held in many cases.

We must assume that the jury found the facts which the bill of exceptions states the evidence tended to prove, and they support the verdict. It appears that while negotiations were pending, Snow, the purchaser, referred Seeley to the defendant for information concerning his financial responsibility. This indicates that Snow and the defendant were acquaintances and that the latter knew, or assumed to know, as to his pecuniary responsibility, and the bill states that the defendant was to have one-fourth of the goods sold for recommending to the seller that Snow's notes, indorsed by Clark, would be good; and that after the trade was concluded, the goods were delivered to the defendant at his store in Syracuse, and that he received a portion of the proceeds of the same. This is the effect of the statement in the bill of exceptions. This tends to establish that the defendant was an active participant in the fraud perpetrated upon Seeley, profited by the transaction and connected himself therewith before the sale was consummated. Seeley could have repudiated the sale and maintained an action in replevin against the defendant and recovered the goods which he received into his possession, having by means of his fraud gained possession of part of the goods in question and derived a profit therefrom, his act resulted in a direct injury to the property, rights and interests of Seeley, which gave him a right of action against the defendant, which would have survived to the personal representatives of Seeley, and was therefore assignable by him in his lifetime.

The distinction in principle between this case and *Zabriskie* v. *Smith*, arising out of the facts of the case, was observed and followed in *Haight* v. *Hayt* (19 N. Y., 464). There the vendor of lands was guilty of false representations as to an incumbrance, whereby the vendee suffered a loss, and it was held that the right of action survived to and against the personal representatives of the parties. There, as here, the party perpetrating the fraud gained a pecuniary advantage by means of his false and fraudulent representation.

In *Dininny* v. *Fay* (38 Barb., 18), the cause of action was against the defendant, a sheriff, for neglect of his duty in not serving a

body execution delivered to him for that purpose, and it was held that the cause of action arising out of the sheriff's neglect of duty was assignable, for the reason that the omission to collect the execution was a wrong to the property, rights and interests of the plaintiff in the execution, and would survive to his executor or administrator, and was therefore assignable. (See, also, *Graves* v. *Spier*, 58 Barb., 386; *Byxbie* v. *Wood*, 24 N. Y., 612; *McKee* v. *Judd*, 12 id., 622.)

We think it plain, beyond all argument, that the fraudulent acts of the defendant worked a direct injury to the property and goods of the assignor, and the same was assignable within the provisions of the statute as interpreted by the cases we have referred to.

The judgment should be affirmed.

SMITH, P. J., and BRADLEY, J., concurred; HAIGHT, J., not sitting.

Judgment affirmed.