Brady, P. J.
In Marie et al. v. Garrison (97 N. Y.), it was expressly held that a demurrer to a complaint for insufficiency can only be sustained when it appears that admitting all the facts alleged, it presents no cause of action whatever. It is not sufficient to assail it successfully that the facts are imperfectly or informally averred, or that the pleadings lack definiteness and precision, or that the material facts are only argumentatively averred. The com *246 plaint is deemed to allege what can be implied from the allegations therein by reasonable and fair intendment and facts impliedly averred are traversable in the same manner as though directly averred. And further, it was said that the remedy for indefiniteness is not by demurrer, but by motion. Under the Code, as said by Denio, J., in Zabriskie v. Smith (13 N. Y., 330), it is sufficient that the requisite allegations can be fairly gathered from all the averments in the complaint, though the statement of them may be argumentative, and the complaint deficient in technical language. In considering the propriety of the demurrer herein, therefore, the duty is imposed of marshaling all the facts to be gathered, whether definitely or indefinitely, or argumentatively stated or impliedly averred, or apparent from reasonable and fair intendment. The rule springs from a broad spirit of justice, which must not permit a meritorious cause to be affected by reason of the pleaders obscure or infelicitous methods or inability to spread out the facts clearly. Obscurity of statement is no longer permitted to.defeat a remedy, if one exist, however, it may enlarge the labors of the tribunal.
The complaint herein must be considered by these standards. It may justly be said that it is distinguished by too much generalization. The criticism that there is a constant reference to schemes which are not clearly defined, is deserved. It is enough to authorize the action if one scheme, illegal for any reason, is so developed as to be appreciable.
Here one seems to be. The plaintiff complains of a scheme in the nature of a_ conspiracy to take from the Staten Island Railway Co. its ferry franchise, and, therefore, its chief, if not only asset, and transfer it to the Rapid Transit Co., which was accomplished by the execution of a lease given to the latter company, and was obtained by improper artifice as alleged and without adequate compensation. This act, it is true, was ratified by the stockholders of the company, but that event is also assailed as unfairly brought about, and in the manner which will appear hereafter’. The charge generalized is that Mr. Wiman, an officer and stockholder of the Rapid Transit Co., a company without resources and without development, essayed to secure a union of the two companies by various efforts, but unsuccessfully; the directors of the Staten Island Railway Co. refusing to co-operate, condemning and rejecting the scheme as dangerous to the interests of the railway, company and its stockholders, emanating as it did from an irresponsible organization. He then, it is charged, being connected with both companies, an officer or director in each, by personal purchase of the stock of the railway company and by inducing his *247 friends to purchase it and to unite with him in the scheme, and by changes , in the direction of the railway company, consummated by such purchases, succeeded in obtaining the lease, aiid as well its ratification by the same or kindred methods, the stockholders and directors being his allies and confederates in both companies, and expressly for the purpose he had in view. He is thus charged with playing a double role, one in each company, as well as his associates, and to the greater advantage to the Rapid Transit Company, in the prospei’ity of which he was specially interested, and for which he labored to the disadvantage of the other company. And it is alleged that this was done at a time when the Rapid Transit Company had no property of any kind, more than of nominal value, and no business or business income, and wTas an organization speculative in its origin and purpose and financially irresponsible, facts which were within the knowledge of the directors and stockholders of the Staten Island Railway Company generally, and also within the knowledge of the directors and stockholders who voted for and ratified the execution of the lease, and presumably within the knowledge of the Rapid Transit Company; and further, that in order to procure the stock necessary to accomplish the desired results, namely, to effect a change of management of the railway company, and in that way secure the lease given, large sums of money were paid or secured therefor, and Wiman, or his friends or associates, procured for him the proxies to vote upon, .which were used, and a willing board elected. The facts thus arranged are either directly asserted or stated in one of the modes permitted or reasonably intended. The gravamen of the complaint is, that Wiman, by subsérvient persons who were placed in power through his instrumentality, and operating in both companies, and for the purpose of accomplishing it, finally succeeded in obtaining, in effect, the franchise of the railway company by a lease, a project which involved in its success the deposition of some of the original directors. and stockholders of the railway company, and therefore of directors who had refused to unite with the Rapid Transit Company, it having no business or financial responsibility, and thus as the result of a combination to accomplish by devious and objectionable practices the quasi absorption of one company for the success and greater advantage of the other.
These allegations may present charges that are not susceptible of proof—that may be purely imaginative, speculative and unjust, but with that we have nothing to do. If they are substantiated by acceptable evidence the lease cannot be maintained. The authorities are abundant and *248 cogent. Even a majority of stockholders;will not be permitted to sanction a transaction which is tbféputeóme of a scheme dishonest or fraudulent in its inception ¡and development. The minority stockholder has rights ^hich under such circumstances must be recognized. '
“Fraud or covin doth destroy all things.” Here the charges embrace directors and stockholders in both companies as conversant with and aiders and abettors of the scheme of securing the improvident disposition by lease of the franchise of the railway company. The ownership, it is true, of a majority of the capital stock of a corporation invests the holders with many and valuable incidental rights. They may legally control the company’s business, but in thus assuming the .control, they take upon themselves the correlative duty of diligence and good faith. They cannot manipulate the company’s business in their own interests to the injury of other corporators. Meeker v. Winthrop Iron Co., 17 Fed. Rep., 50; Currier v. N. Y. and W. S. R. R. Co., 35 Hun, 355; Menier v. Hooper Tel. Works., 9 Eng. L. R. Ch. App., 350; Barr et al. v. N. Y., Lake Erie and W. R. R. et al., 96 N. Y., 444; Ervin et al. v. Oregon Ry. and Nav. Co. et. al., 20 Fed. Rep., 577; Met. El. R. R. Co. v. Man. R. R. Co., 14 Abb. N. C., 103, et passim.
See also the recent case of Central Trust Co. v. The N. Y. City and Northern R. R. Co., in which Justice Andrews observed what may be said here, mutatis mutandis. “Upon principle it would seem that whatever practical difficulties might arise in ascertaining the facts in any given case, if it were proven that a board of directors had literally no wills of their own, but merely carried out the orders of a third party in making a contract, the corporation should if it desired, be relieved from the contract without being compelled to prove that it was fraudulent or disadvantageous to the company. It seems to be rather a dangerous doctrine to hold that, as a matter of law, a board of directors who are mere dummies can irrevocably bind a corporation by a contract with the person who has placed them in office for the express purpose of having them make the contract.
The cases bearing upon the subjects discussed _ are sufficient to demonstrate that the plaintiff is not remediless on the facts detailed as presented by the complaint.
The learned justice in the court below conceded that the cases cited by _the counsel for the plaintiff illustrating the principles governing the action by a majority of directors or stockholders, oppressive, fraudulent and in disregard of minority rights, upheld sound doctrine, but thought that *249 the plaintiff had not set up facts, which if true called them, into view. In this it is thought he erred.
The favorable features of the lease to the lessor as asserted by the defendants assuming them to be so, does not affect the question, for it is alleged notwithstanding they seem tobe as suggested, that they are not so, and that the greater benefits of that instrument are secured to the Rapid Transit Co. There are other considerations which press for place in estimating the value of the complaint herein but they will not be presented, enough having been arrayed to require the defendants to answer. What has thus been gathered from the allegations of the complaint made positively, inferentially, impliedly, argumentatively and by reasonable intendment, has led to the result proclaimed, and the judgment appealed from must therefore be reversed with liberty to the defendant to answer on payment of costs.
Daniels, J., concurs.