KELLY *v.* GOULD *et al.*

*(Supreme Court, Special Term, New York County.* June 22, 1888.)

DECEIT—LIABILITY OF DRAWER TO ASSIGNEE OF DRAFT.

Defendants, who were building a railroad, obtained the incorporation of a construction company, which was never organized, and was irresponsible, and procured contractors to contract with its pretended agent by false representations that money had been obtained in Europe with which to build the road. The chief engineer, as agent of defendants, drew drafts on the agent of the construction company, for work done under the contract, and had them cashed at a bank where they had done business before, by exhibiting the contract with the construction company, and detailing the statement made that money had been obtained in Europe. *Held*, that an action was maintainable by the bank's assignee of the drafts, for the fraudulent representations.

On demurrer to complaint.

Action by Eugene Kelly against Jay Gould, the Mexican Oriental International & Interoceanic Railroad Company, the Mexican Southern Railway Company, foreign corporations, and others, for false representations, whereby they obtained money on drafts drawn on an irresponsible company.

*Ewing & Southard,* for plaintiff. *Vanderpoel, Green, Cuming & Goodwin* and *John Yard,* for respondents.

O'BRIEN, J. The defendants have separately interposed a demurrer to the complaint herein, alleging as grounds therefor—*First,* the complaint does not state facts sufficient to constitute a cause of action; *second,* that there is a defect of parties; *third,* that the court has no jurisdiction of the subject-matter of the action; *fourth,* that there is a misjoiner of causes of action, because, as is alleged, (*a*) causes of actions against individuals are joined with causes of action against corporations; (*b*) causes arising in contract are joined with causes arising in tort.

The third ground—that the court has no jurisdiction of the subject-matter of the action, the plaintiff being a resident of New York—would seem to be disposed of by section 1780 of the Code of Civil Procedure as untenable. The other grounds will be noticed in discussing the principal one relied upon by all the defendants, that the complaint does not state facts sufficient to constitute a cause of action.

The leading facts stated in the complaint, out of which the right of action arises, may be summarized thus: In July, 1883, the Mexican Oriental International & Interoceanic Railroad Company, one of the defendants herein, (Gould's line,) had a concession to build a railway from New Laredo, on the Rio Grande, opposite the south-western terminus of the Missouri Pacific system, to the City of Mexico. It had expended $1,500,000 on the line, had graded the greater part of the first 100 miles, through Messrs. Hunter, Sampsel & Wells, contractors, who then had a construction force on the line, idle, but ready to go on with the work as soon as additional funds could be provided. The Mexican Southern Railway Company (Gen. Grant's line) had at the same time a concession to build from the City of Mexico to the southern boundary of the republic, with one branch south-easterly to Vera Cruz, and another south-westerly to the Pacific, but had done no work. A concession from the Mexican government consolidating the two systems had recently been ob-

tained, giving increased subsidies, but containing the condition that work should be resumed by July 14, 1883, and prosecuted vigorously thenceforth; and, in case of breach by the companies, that the franchises should be absolutely forfeited. All of the defendants had an interest in one or the other of the original charters, and therefore were interested in resuming work by that date, and thus saving the forfeiture. The consolidation was not effected, but was postponed to await the result of a negotiation then being made in Europe for funds to build the consolidated line, to aid which negotiation defendant George J. Gould was then in Europe. As a preparation for construction of the consolidated line, articles of incorporation under the laws of Iowa were obtained for a company, to be called the "Southwest Construction Company," with the view to having it build the whole line if the necessary money could be obtained. But no stock was subscribed, nor organization effected, nor contract given it to build, nor officers elected. It was, in fact, merely inchoate, without officers or capital, or responsibility, or right to contract to build the railway. The 9th of July, 1883, had come, work had not been resumed, and all the franchises of both the old companies, and of the proposed consolidated company, were about to be forfeited. Only five days remained within which to commence the work of construction. The situation was desperate. Only Hunter, Sampsel & Wells, the former contractors and their forces, then on the old line, could save it. Thereupon, on the 9th of July, 1883, defendants induced the contractors (one of whom, J. B. Sampsel, was then in New York) to propose to J. Henry Work, who was falsely represented to be secretary of the Southwest Construction Company, and authorized to contract for it, to grade 270 miles of the line, on the terms of their recent contract. This proposition was procured by the defendants, from said contractors, by falsely assuring them that they (the defendants) had obtained in Europe all the money needed for the work. They then caused J. Henry Work to accept the proposal so procured, and to order the immediate resumption and rapid prosecution of the work, which order was forthwith carried into effect. The Milmo National Bank of Laredo, Tex., complainant's assignor, had theretofore cashed many drafts drawn by B. S. Wathen, as chief engineer of the Mexican Oriental International & Interoceanic Railroad Company, for the work done as aforesaid, before July 9, 1883; which drafts were drawn on George M. Dodge, president of the International Railway Improvement Company, and afterwards of the Oriental Construction Company, defendants herein, which companies had theretofore been engaged in constructing said 100 miles of railway. All of these drafts were duly paid. The same bank had also cashed one draft drawn by said chief engineer on said J H. Work, on an estimate for work done in the latter part of July, 1883, which draft was also paid. Said bank thereafter, on the 24th of September 1883, cashed two drafts for an aggregate of $32,354.11, which defendants authorized the chief engineer to draw on Work, as pretended secretary of said so-called Southwest Construction Company, for work done under the fraudulent arrangement above set forth. The bank knew nothing of the Southwestern Construction Company, but relied on the good faith of defendants, and therefore supposed that the alleged bogus contract was real and valid, and made with a company organized in good faith by defendants, as owners of said railway properties and franchises. The bank also relied on the truth of the false and fraudulent representations made to the said Hunter, Sampsel & Wells, to the effect that defendants had obtained in Europe all the money needed to complete the railway; and, led on by these false representations, had cashed the two drafts last named, which were duly presented, but not paid. The complaint also sets forth that, long before the cashing of said two drafts for $32,354.11 by said bank, the defendant utterly failed in their negotiations abroad, and entirely abandoned the same, and all expectation of raising money to pay for work on the railway; and that they fraudulently kept the contractors and chief engineer and the Milmo National

Bank in ignorance of their failure, knowing that the contractors were going on with the construction upon the faith of their representations, as above set. forth, and knowing and intending that the drafts would be cashed by the Milmo Bank on the faith of such representations. The complaint further al- leges that the defendants, except said Work, and the Mexican Southern Rail- way Company, were the owners of said Mexican Oriental International & In- teroceanic Railway, and, as such, got the benefit of the said expenditure of the moneys wrongfully obtained from the Milmo Bank. Participation by all of the defendants in the false representations above set forth, knowing them to be false, and their knowledge of all the facts, and the reliance of the Milmo National Bank on the false representation as true, and the damage to it oc- casioned thereby, are all fully alleged in the complaint.

Upon these facts the plaintiff claims to be entitled to recover against all the defendants on the following grounds: *First.* A fraud in "palming off" on the contractors a pretended contract with an unorganized, unauthorized, and irresponsible company. *Second.* A fraud in executing a contract in the name and in behalf of a company without authority, in which deceit all the defend- ants were implicated. *Third.* A fraud in representing that money had been obtained by them to complete the consolidated line. *Fourth.* A fraud in pur- posely failing to correct their false representations by advising the contractors and the bank that the money had not been obtained, and consequently that the work could not be paid for. *Fifth.* The participation of the defendants. in the false representations made by defendant Work in signing, without au- thority, the paper as secretary of the Southwestern Construction Company.

It will thus be seen that the action relied upon is one *ex delicto.* The main. fact relied upon as the basis of the fraud is the alleged bogus contract pur- porting to have been made between the Southwestern Construction Company and Hunter, Sampsel & Wells, the contractors, and which was "palmed off" on plaintiff's assignor, the Milmo National Bank. It is well settled that to sustain a demurrer for insufficiency it must appear, admitting the facts stated to be true, that the complaint presents no cause of action whatever. It is not sufficient that the facts are imperfectly or informally averred, or that the pleading lacks definiteness and precision. The complaint is deemed to allege what can be implied from the allegations therein by reasonable and fair in- tendment. As stated by DENIO, J., in *Zabriskie* v. *Smith,* 13 N. Y. 330, the rule by which, under the Code, the sufficiency of a complaint is to be deter- mined, is thus stated: "It is sufficient that the requisite allegations can be fairly gathered from all the averments in the complaint, though the statement of them may be argumentative, and the complaint deficient in technical lan- guage." Had the Southwestern Construction Company been made a party de- fendant under allegations showing that the moneys procured from the Milmo Bank were upon drafts drawn upon that company, or if it could be inferred from the allegations in the complaint that the cause of action was one aris- ing out of transactions between the said company and the Milmo Bank, many of the arguments urged as to misjoinder of causes of action, and in favor of making the said company a party defendant, would be available and good. As. I read the complaint, however, it sets up but one cause of action as against. all the defendants; claiming, substantially, that they are responsible for hav- ing wrongfully and fraudulently set in motion a train of circumstances which, finally resulted in plaintiff's injury. The complaint is not to be deemed as. uniting several causes of action, because it sets forth several grounds relative to the same transaction, on either of which the defendants would be liable. I do not think it would be claimed, assuming the facts stated to be true, had Hunter, Sampsel & Wells, the contractors, brought an action, alleging, sub- stantially, as the plaintiff does here, that they were imposed upon by a pre- tended contract with an unauthorized, unorganized, and irresponsible com- pany, that false representations as to the procuring of moneys to be used in

payment for work to be done under the contract were made, but that they
would have pleaded a good cause of action. The only real question, there-
fore, is not as to whether the complaint sets forth a cause of action as against
the defendants, but whether it is such a cause of action as inures to the ben-
efit of and can be maintained by plaintiff. It is contended with much force
that the contract was not with the Milmo Bank, and therefore, unless a party
or privy, it cannot recover. The same objection is urged as to the representa-
tion about obtaining the loan in Europe, which, even though false, would not.
entitle the Milmo Bank to recover; for the reason that it is not alleged that
they were made to the bank, but to Hunter, Sampsel & Wells.

Another objection suggested is that the complaint is further deficient in not.
alleging that the defendants had any knowledge that the bank had been in-
formed of their endeavors to negotiate a loan in Europe, nor that the defend-
ants knew that any request had been made upon the bank to discount the
drafts, and therefore the defendants were under no obligation to acquaint the
bank with the fact that the attempt to negotiate the loan was a failure. The
answer to this line of reasoning appears to me to rest upon the fact, appar-
ently overlooked in the argument of defendants' counsel, that it is averred.
that not only the contractors, but Walthen, the defendants' agent and chief en-
gineer, together took the drafts to the Milmo Bank for negotiation, and at
that time exhibited to the bank the proposition of Hunter, Sampsel & Wells.
and the recommendation of Gould, Sage & Grant, the alleged pretended ac-
ceptance of George J. Gould, the instructions of Work to Walthen to draw
these drafts, and that then and there they detailed to the bank the statements.
made to them that the money to carry on the work had been obtained in Eu-
rope. Walthen, who had been constituted the agent of the defendants in a.
common enterprise in which all were interested, in drawing and negotiating
the drafts and making the representations, acted within the scope of his au-
thority; and his acts as such agent appear to me to be as binding on defend-
ants as if they themselves made them to the bank. This rule seems to accord
with the principle of adjudications, in which it has been held that it is not
essential that the representation should be addressed directly to the party who
seeks a remedy for having been deceived and defrauded. At the time that
these statements were made, to induce the Milmo Bank to part with money to
be expended for the benefit of the defendants, the complaint alleges that the
defendants then knew that the representations were false, and that the con-
tract between the Southwestern Construction Company and the directors was.
unauthorized, and made by persons who had no authority to bind the com-
pany. The defendants' liability is predicated, not only on the negotiations of
the contractors and agent with the bank, but also upon the ground that the
construction contract was, in substance, a forgery, perpetrated with their
knowledge and assent. It is for these wrongful acts, which the plaintiff's as-
signor claims to have relied upon to his detriment, that a recovery is sought.
The gist of the action is fraud.

It is true that the force of the allegations is somewhat lessened by the state-
ment in one of the paragraphs of the complaint that "the Milmo Bank cashed
said drafts relying exclusively on the good faith of the defendants, to whom
alone said bank looked for payment, regarding them as principals in the trans-
action." It is evident, however, from the other averments, (and for this pur-
pose the complaint must be read as a whole, in order to determine the mean-
ing of any particular part,) that it was not intended to state that the Milmo
Bank relied exclusively on the good faith of the defendants who owned the
enterprise, for otherwise all the allegations, as to the fraud practiced upon the
plaintiff, would be mere idle and useless averments. I think, therefore, that
a fair construction would mean that not only did the bank rely upon the good
faith of all the other acts, efforts, and agencies of the defendants, but also
that it relied upon the representations which were held out by the defendants

as to the genuineness of the contract purporting to be made by the Southwestern Construction Company, to its having authorized the drawing of the drafts, and secured the loan wherewith to pay the drafts. The interest and the part played by all the defendants in a common scheme, which resulted in the perpetration of a wrong against the bank, is sufficient, in my opinion, to make them responsible. It is alleged that their participation was with knowledge on their part of the entire transactions, except as to the cashing of the drafts by the bank. They benefited by the expenditure of the proceeds of the fund, wrongfully obtained; and, as stated in 2 Pom. Eq. Jur. § 918: "The remedy which equity gives, reaches all those who are actually concerned in the fraud, and who knowingly and directly participate in its fruits, and all those who derive title from them voluntarily or with notice. It would be indeed extraordinary if persons could arrange a scheme from which all were to be benefited, and, after inducing a bank (relying on fraudulent acts and representations) to part with money, that they could shield themselves from liability behind a worthless corporation, which they had wrongfully and without authority used for the very purpose of perpetrating the wrong. It is true that the mere fact of the construction company, being irresponsible and insolvent, standing alone, would not help the plaintiff. Being a corporation organized under the laws of Iowa, it was a legal entity, just as fully as if its treasury were overflowing with gold, and until dissolved its legal existence would continue. But where, without authority, persons use a worthless and insolvent corporation for their own benefit, and to the detriment of all who rely on the good faith of the parties and the genuineness of the corporate acts, they should be held responsible for the wrongs perpetrated on innocent persons, and should not be permitted to hide behind a legal skeleton without substance or responsiveness. Judgment should therefore be for plaintiff on the demurrers, with leave to defendants to answer.